## 67414. RICHARDSON v. PALMOUR COURT APARTMENTS.

BANKE, Judge.

This is an appeal from a summary judgment for the defendant in a "slip-and-fall" case.

The plaintiff slipped and twisted her ankle while descending a metal staircase leading from her apartment to a parking lot behind the building. She contends that this staircase was unreasonably dangerous because it was not adequately illuminated and because the raised bumps which had been built into the steps to make them less slippery had become worn down by continuous usage over time. She sued the owner of the apartments for his alleged negligence in allowing a hazardous condition to exist on the premises.

The following facts may be assumed for purposes of this appeal. The plaintiff began residing in the apartment building in January or February of 1981. Her injury occurred the following October, as she was leaving home at around 11:00 p.m. for work as a private duty nurse. It was raining at the time; and, because the staircase was not enclosed, the steps were wet. There was another staircase the plaintiff could have used, which was both enclosed and carpeted. However, it led to the front of the building rather than to the parking lot; and it, too, lacked illumination. The plaintiff had used this front staircase as her primary means of access to and from her apartment until April of 1981, when she obtained an automobile. From then on, she regularly used the rear stairways so as to avoid having to walk around the building to reach the parking lot. Having used the rear staircase on a regular basis for six months, she was quite familiar with the existence of the conditions which allegedly gave rise to her injury.

There was an electric light fixture located outside the plaintiff's apartment which would have provided some illumination for the front stairway had it been working. Due to a defect in the switch, however, this light had not worked at anytime since the plaintiff moved into her apartment. The owner of the building lived on the other side of the stairway from the plaintiff, and his apartment, like the plaintiff's, had an outside light. However, that light was not on at the time.

The plaintiff had made repeated requests of the resident manager of the apartments to illuminate the rear stairway and had been assured that the problem would be corrected. In an affidavit submitted in opposition to the defendant's motion for summary judgment, the plaintiff described the situation as follows: "Prior to my fall of October 23, 1981, I complained to the resident manager about the slipperiness, the steepness, the lack of light on the steps, and the dark color of the steps. I asked her (resident manager) if I could paint a white line down the middle of the steps in order to see where I was putting my feet, especially when going down the steps. The resident

manager told me that any day 'lights were going up' in the back area of the apartment to enable everyone to see better and that I should not worry about it. The darkness of the steps literally make you slowly feel for each step to make sure you have your foot on the next step while going down the stairway. I used the steps many times since April 1981, (after I got my car), but it was not until October 18, 1981, that I began having to use them at night to go to a second job that I had to be at prior to 11:00 p.m. It only took a few days after that time until I 'fell' and injured my ankle and hand (slightly) even though I was proceeding down the steps with the utmost care not to fall. The particular night in question was very very dark with a very hard rain falling."

The plaintiff explained her decision not to use the front stairs as follows: "I could have gone out the front stairway the night in question (October 23, 1981) when I injured my ankle but since the stairway was enclosed with no interior light at all, and said stairway is so dark you cannot even see your hands in front of your face or if someone is hiding on the steps, or even see the steps as you feel your way down, I chose what I considered the lesser of two evils to my detriment." *Held*:

It has often been held that the true basis for a landlord's liability to a tenant for injuries resulting from a defective or hazardous condition existing on the premises is the landlord's superior knowledge of the condition and of the danger resulting from it. See, e.g., *Auerbach v. Padgett*, 122 Ga. App. 79 (176 SE2d 193) (1970); *Vizzini v. Blonder*, 165 Ga. App. 840 (303 SE2d 38) (1983). This is merely a manifestation of the general rule regarding the liability of proprietors for injuries to invitees occurring on the premises. See, e.g., *Telligman v. Monumental Properties*, 161 Ga. App. 13 (288 SE2d 846) (1982); *Pound v. Augusta National*, 158 Ga. App. 166 (279 SE2d 342) (1981); *Rogers v. Atlanta Enterprises, Inc.*, 89 Ga. App. 903 (81 SE2d 721) (1954).

In accordance with the "superior knowledge" principle, it has been held that "[w]here a portion of leased premises is dangerously out of repair and such condition is patent and known to the tenant, who continues to use that area, the tenant cannot recover from the landlord for damages resulting from the condition." *Hearn v. Barden*, 115 Ga. App. 708 (155 SE2d 649) (1967). The plaintiff in *Hearn* was injured through her use of a defective screen door at the rear of her house. Although she alleged that it had been necessary for her to use this door because the only other exit from the house led across a front porch which had just been painted by the landlord, her knowledge of the danger was held to preclude her from any recovery.

In *Taylor v. Boyce*, 105 Ga. App. 434 (124 SE2d 647) (1962), a tenant was precluded on similar grounds from recovering for injuries

sustained as the result of a fall through the rotten timbers of her back porch. This court held that she had knowingly assumed the risk of such a fall, even though she had asked her landlord many times to repair the defect and even though she had to walk across the porch to reach the only source of drinking water available on the premises. In such circumstances, the court ruled, the tenant's options were either to move out and sue the landlord for failure to keep the premises in repair or else to remain, make the repairs herself, and set the cost off against the landlord's claim for rent.

An even more extreme application of the assumption of risk doctrine in a landlord-tenant setting is found in *Bixby v. Sinclair Refining Co.*, 74 Ga. App. 626 (40 SE2d 677) (1946). The plaintiff there suffered extensive damage to her clothing, furniture, and personal effects as a result of the collapse of the very walls of the structure itself. However, because she alleged in her petition that she had notified the landlord of the danger, the court held that she must be deemed to have voluntarily assumed the risk, even though she further alleged in her petition that other housing in the community was so scarce as to be almost unavailable.

In *Yankey v. Battle*, 122 Ga. App. 275 (176 SE2d 714) (1970), the same result was reached in a case involving a malfunctioning light over a stairwell. The plaintiff there was a domestic servant who fell while descending to the basement of the house in which she was working. This court ruled against her on motion for summary judgment despite her testimony that she had been promised the malfunction would be fixed and that she was descending the stairs to reach the only bathroom in the house not off limits to her. See also *Lee v. Malone*, 55 Ga. App. 821 (191 SE 494) (1937).

Although the foregoing cases have never been expressly overruled, the severity of the assumption of risk doctrine in the landlord-tenant setting has been considerably ameliorated by more recent decisions of this court. For example in *Hull v. Mass. Mut. Life Ins. Co.*, 142 Ga. App. 269 (235 SE2d 601) (1977), we reversed a grant of summary judgment to a landlord in a suit by a tenant who had slipped on an icy stairway leading to her apartment, although it was undisputed that the tenant had attempted to traverse the ice with full knowledge of the danger. The court relied on the fact that the tenant had been required to use these steps in order to report to work, noting that "[t]o hold otherwise, we would make the appellant a captive in her own apartment during cold weather . . ." Id. at 270. Similarly, in *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189, 193 (210 SE2d 337) (1974), wherein the plaintiff slipped on ice covering the parking lot outside her apartment, we held that a material issue of fact was created by evidence that there was no other means of access to the apartment.

Another circumstance under which the assumption of risk doctrine may be relaxed in the landlord-tenant context appears in *Plant v. Lowman*, 134 Ga. App. 752 (216 SE2d 631) (1975), a case with facts strikingly similar to those in the case before us now. The plaintiff there also slipped while attempting to negotiate a staircase which was completely darkened due to a defect in a light switch, and she, too, had complained about the defect and had been assured by the management that it would be remedied. There was another stairway which was available to her and which was apparently not as dark, but she chose not to use it because it was not enclosed and the weather was bad. While noting a ruling from *Maloof v. Blackmon*, 105 Ga. App. 207 (2) (124 SE2d 441) (1962), to the effect that " '[t]here is no duty on the part of a landlord to maintain lights or to illuminate passageways, porches, and steps in the absence of a contractual obligation to do so, or when so required by statute,' " the court held that "[t]he rule does not apply when, at the time the tenant moves in, the defect in the lighting system is pointed out and the tenant is reassured that it will be repaired, which is not done." *Plant v. Lowman*, supra at 752.

The rationale for permitting the tenant to rely on assurances made by the landlord applies equally, of course, whether the assurances are made at the time the tenant moves in or whether they are made subsequently. If the tenant is not permitted to rely on such assurances, then a "catch-22" situation arises whereby the tenant's complaints to the landlord regarding the presence of a dangerous condition on the premises automatically insulate the landlord from liability by establishing that the tenant has at least equal knowledge of the danger.

Given the testimony of the plaintiff in this case that she had received and relied upon assurances from the resident manager that the light over the stairwell would be repaired "any day," we hold, in reliance on *Plant v. Lowman*, that her knowledge of the condition and of the danger does not insulate the defendant from liability as a matter of law. The grant of summary judgment to the defendant is accordingly reversed.

*Judgment reversed. McMurray, C. J., Quillian, P. J., Shulman, P. J., and Pope, J., concur. Deen, P. J., Birdsong, Carley and Sognier, JJ., dissent.*

DECIDED FEBRUARY 3, 1984 —
REHEARING DENIED MARCH 12, 1984 —

*William H. Brandon*, for appellant.
*George M. Geeslin, Charles M. Goetz, Jr.*, for appellee.

CARLEY, Judge, dissenting.

I certainly understand and share the majority's sympathy with the plaintiff who was injured after receiving assurances from her landlord that the conditions which ultimately caused her injury would be remedied. However, I do not believe that the existing case law in this state will allow this plaintiff to avoid summary judgment when, on the basis of uncontradicted evidence, an essential element of her cause of action has been negated. In the beginning of the portion of the majority opinion containing the legal reasoning, it is clearly recognized that "the true basis for a landlord's liability to a tenant for injuries resulting from a defective or hazardous condition existing on the premises is the landlord's superior knowledge of the condition and of the danger resulting from it." (Majority opinion, page 205.) The majority then proceeds to cite and discuss numerous cases enunciating *and* applying this principle. *Auerbach v. Padgett*, 122 Ga. App. 79 (176 SE2d 193) (1970); *Vizzini v. Blonder*, 165 Ga. App. 840 (303 SE2d 38) (1983); *Hearn v. Barden*, 115 Ga. App. 708 (155 SE2d 649) (1967); *Taylor v. Boyce,* 105 Ga. App. 434 (124 SE2d 647) (1962); *Bixby v. Sinclair Refining Co.*, 74 Ga. App. 626 (40 SE2d 677) (1946). While acknowledging that the cases clearly applying the superior knowledge test have not been overruled, the majority then proceeds to disregard this superior knowledge requirement in the instant case. In this case, it is undisputed, and clearly shown by detailed testimony of the plaintiff herself, that plaintiff had at least equal — and probably superior — knowledge of the defects and danger in connection with the staircase.

Although I can understand the majority's zeroing in on the fact that the landlord in this case had knowledge of the defect and had specifically promised to remedy the situation, unfortunately, proof of this promise by the landlord simply does not substitute for compliance with the requirement that the tenant show that the landlord had knowledge of the defect which was superior to that of the tenant. The majority reverses the grant of summary judgment in this case "in reliance on *Plant v. Lowman* [134 Ga. App. 752 (216 SE2d 631) (1975) that a material issue of fact exists as to whether plaintiff's conduct in continuing to use the stairs was so unreasonable as to preclude her from any recovery] as a matter of law." However, in *Plant* — unlike the instant case — there *was* an issue as to knowledge because, in *Plant,* the plaintiff "incorrectly thought there was a bannister and reached out for it but no bannister existed . . ." *Plant v. Lowman,* supra. In this case, it is recognized by the majority that the plaintiff knew the nature *and* extent of the danger of the staircase. "This case is controlled by *Taylor v. Boyce*, [supra], and *Alexander v. Rhodes*, 104 Ga. 807 (30 SE 968) [1898], which held that even though the plaintiff alleged that the route chosen was one of necessity, yet where

the plaintiff knew of the danger [she] assumed the risk and was guilty of such negligence as would bar recovery." *Hearn v. Barden,* supra at 710. See also *Clements v. Blanchard,* 141 Ga. 311 (80 SE 1004) (1913). In view of the undisputed knowledge of the plaintiff of all defects and dangers, it is my opinion that the trial court correctly granted summary judgment. Therefore, I must respectfully dissent.

I am authorized to state that Presiding Judge Deen, Judge Birdsong and Judge Sognier join in this dissent.