A97A1507. STANDARD MANAGEMENT COMPANY v. SCOTT.
(493 SE2d 216)

POPE, Presiding Judge.

Plaintiff Monica Scott is a resident of the Peachtree North

Apartments, which are managed and operated by defendant Standard Management Company. Plaintiff brought suit against defendant for negligent maintenance of her apartment after two separate incidents occurred in which plaintiff allegedly was injured due to a portion of a window in her apartment falling out of its frame. After answering plaintiff's suit and denying liability, defendant filed a motion for partial summary judgment regarding its liability for the second incident. The trial court denied defendant's motion, and defendant appeals. Concluding that summary judgment should have been granted to defendant as to the second incident, we reverse.

Construed in plaintiff's favor as the nonmoving party, the record evidence shows that on May 16, 1994, plaintiff entered her eleven-year-old son's bedroom in her eighth floor apartment and noticed that the curtains to the bedroom window were blowing in the wind. Upon pulling the curtains back, she discovered that the three-foot by three-foot glass portion of the window that actually opened was sitting askew or "catty-corner" in its metal frame. When plaintiff attempted to close this portion of the window back into the frame, the wind coming through the opening blew it completely out of the frame causing plaintiff to fall to the floor with the glass landing on top of her. Although the glass did not break, plaintiff claims she was injured in her fall.

Immediately following the above, plaintiff informed security personnel about the window. She then waited for an ambulance to arrive and take her to a hospital. Upon returning from the hospital, plaintiff found two maintenance men in her apartment, and she saw them put the portion of the window that had fallen out back into its frame and turn a lever to hold it in place. Plaintiff was aware, however, that maintenance had not fixed the window permanently at that time.

The next day, plaintiff informed defendant's resident manager about the window and gave the manager two window brackets she had discovered on the floor near the window. After the manager told plaintiff that a work order would be filled out and that maintenance would get to the window, plaintiff expressed her concern that the window be permanently fixed to avoid any risk of the same thing that happened to her happening to her son. Realizing the potential danger, plaintiff also instructed her son that his bedroom was off-limits until further notice and that he was to stay away from the window. From that point until May 20, 1994, plaintiff's son slept in another room with plaintiff to avoid the risk posed by the window, and plaintiff has admitted that she knew maintenance had not repaired the window permanently at any time prior to that date.

On May 20, 1994, while waiting for her son to return home from school, plaintiff heard a loud noise in her son's bedroom. When she entered the room, plaintiff saw the curtains blowing, and the same

glass portion of the window that had previously fallen out of its frame was lying on the floor. Rather than having maintenance address the problem, however, plaintiff picked the portion of the window up and attempted to place it back into its frame. She did this even though it was apparent that the wind was blowing, as it had been four days earlier, and with personal knowledge that it often was blustery on the eighth floor of the apartment complex. Subsequently, the wind again blew the portion of the window back on top of plaintiff, who fell to the floor, but this time the glass broke and cut plaintiff's legs.

In its motion for partial summary judgment, defendant argued that it could not be held liable to plaintiff for any injuries she suffered during the May 20, 1994 incident because, at that time, plaintiff had equal or superior knowledge of the hazard and assumed the risk of injury in taking the course of action she chose to take. We agree.

"While a landlord is under a statutory duty to keep the premises in repair (see OCGA §§ 44-7-13; 44-7-14), [a landlord] is not an insurer of [its] tenants' safety. See generally *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189 (2) (210 SE2d 337) (1974). 'Even though the condition of the premises may be hazardous and the landlord negligent, [the landlord] may not be liable for injury where the (tenant) had equal or superior knowledge of the alleged defect. If a (tenant) knows of a defect, "[the tenant] must use all of [the tenant's] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [the tenant]." (Cits.)' *Hall v. Thompson*, 193 Ga. App. 574 (388 SE2d 381) (1989)." *Wells v. C & S Trust Co.*, 199 Ga. App. 31, 32 (403 SE2d 826) (1991).

In the instant case, it is apparent beyond dispute that based on her previous encounter with the portion of the window, plaintiff had some knowledge of the risk of being injured, as well as the danger involved in trying to secure the portion of the window in its closed position while the wind was blowing. Yet armed with this knowledge, the knowledge that the window clearly had not been permanently repaired, and the knowledge that the wind was in fact blowing, plaintiff chose to attempt to reposition the portion of the window in its frame. In doing so, we conclude that plaintiff not only failed to exercise ordinary care for her own safety, but also that she assumed the risk of injury as a matter of law. See *Smith v. Mangram*, 222 Ga. App. 585, 586 (474 SE2d 758) (1996); *Wells*, 199 Ga. App. at 32. This is so even though plaintiff contends that she could not have assumed the risk of any glass breaking because the glass did not break during the first incident. Every person of ordinary intelligence knows that falling glass may break and that broken glass may cut. Thus, the risk of

being cut was an inherent risk plaintiff assumed by undertaking to fix the window herself under the circumstances presented in this case.

Plaintiff's reliance on cases such as *Richardson v. Palmour Court Apartments*, 170 Ga. App. 204 (316 SE2d 770) (1984) and *Phillips v. King*, 214 Ga. App. 712 (448 SE2d 780) (1994), in support of her contention that the superior knowledge and assumption of the risk doctrines should not be applied in the case at bar, is misplaced. Unlike the facts presented in those cases, here there was no coercion of circumstances or necessity which would justify the course of action plaintiff took. Although plaintiff claims she had to try and fix the window herself because she had no telephone and was afraid that if she left her apartment to alert maintenance her son might come home and be faced with an open eighth story window, the record clearly shows that plaintiff had other options. Specifically, the door to her son's bedroom had a lock on it that plaintiff could have used while she went to alert someone about the window. Additionally, plaintiff simply could have waited for her son, who was expected home shortly, and then taken him with her to report the problem. This is especially true in light of the fact that it is undisputed that the open window, due to its location, did not pose any immediate risk of intrusion by anyone from outside the apartment, and the fact that there was no immediate risk of inclement weather that might damage plaintiff's apartment or her belongings by way of the open window. Therefore, there was no urgency or specific need in reporting the problem prior to her son's arrival.

Accordingly, we hold that the trial court erred in denying defendant's partial summary judgment motion.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED OCTOBER 27, 1997 —

*M. Scott Barksdale*, for appellant.

*Nick Long & Associates, Jonathan L. Leach, Powell, Goldstein, Frazer & Murphy, Richard C. Mitchell, Elmer A. Simpson, Jr.*, for appellee.