A99A0038. McCULLOUGH v. BRIARCLIFF SUMMIT, L. P. II et al.
(516 SE2d 353)

Judge Harold R. Banke.
After falling in an unlit stairwell, James A. McCullough brought a personal injury action against his landlord, Briarcliff Summit, L. P. II, and its general partners, Edward E. Lee III, and Robert A. Crowder. McCullough appeals the summary judgment.

The underlying lawsuit arose after an extended power blackout at Briarcliff Summit Apartments ("Summit"), a high-rise HUD housing project marketed to the elderly and infirm. During the first days of October 1995, a severe storm swept through Atlanta causing some scattered power outages.

When McCullough returned to his sixth floor apartment on the evening of October 4, he discovered the complex still lacked electricity. The next morning, between 10:30 and 11:00 a.m., when McCullough left his apartment to do some volunteer work, his apartment building still lacked electricity as well as any emergency lighting due to a total failure of the apartment's back-up generator. This failure meant that the elevators were inoperable and that the emergency

fire alarms and emergency lighting and exit lighting were not functional. McCullough used the stairwell closest to his sixth floor apartment, the only stairwell he had ever used. While descending the unlit interior stairwell, McCullough suddenly lost his footing on the fourth floor and fell in the dark. He fractured six ribs and suffered a deep head gash.

The undisputed evidence showed that Summit's emergency back-up generator worked very briefly, if at all, before breaking down. Lt. Kenneth Thomas, a fire inspector from the City of Atlanta Fire Department, conducted an investigation after a tenant complained about the lack of emergency power lights at Summit. Lt. Thomas confirmed that the fire alarm system was not working and that all exit lights were out. Lt. Thomas testified that he advised Summit's management that "emergency power is required by law in this building and if emergency power could not be restored, then a 'fire watch' would be required." Lt. Thomas told Summit that it would "need some means of lighting for the tenant's [sic] egress." Three residents including McCullough testified that they did not observe any "fire watch." It is undisputed that Summit did not install any alternate type of lighting during the power outage period.

Finding that McCullough had equal knowledge of the defective condition and that the stairwell in question was not the only means of access to McCullough's apartment, the trial court granted summary judgment. McCullough appeals. *Held*:

1. McCullough contends that material disputed factual questions precluded summary judgment.

By law, a landlord has a duty to keep its premises in repair and is liable "for damages arising from the failure to keep the premises in repair." OCGA §§ 44-7-13, 44-7-14. A landlord must maintain the common area in a reasonably safe condition. *Oliver v. Complements, Ltd.*, 190 Ga. App. 30, 32 (378 SE2d 154) (1989). Nor can a landlord waive or avoid any duties set by statute or by ordinances adopted pursuant to Code Section 36-61-11. OCGA § 44-7-2 (b) (1)-(3).

Generally, whether a landlord has exercised the requisite degree of ordinary care in keeping its premises in repair necessitates jury resolution. *Oliver*, 190 Ga. App. at 32. Here, whether Summit acted negligently after learning that its back-up generator was irreparable is controverted.[1] *McDonald v. Coca-Cola Enterprises*, 220 Ga. App. 567-568 (469 SE2d 805) (1996). No evidence showed that Summit supplied temporary lighting to its tenants, most of whom were elderly. Without question, Summit knew that its exterior stairwell had

---

[1] Although Summit claimed that its generator was well-maintained, McCullough offered evidence that Summit had carelessly located that generator in an area which sustained chronic flooding during rains.

windows and was not pitch black. McCullough testified that he did not share that knowledge. According to McCullough, Summit did not warn him not to use the stairs closest to his apartment and did not advise him to use its exterior stairwell. No evidence showed otherwise. Thus, whether in these circumstances, Summit breached its statutory duties as a landlord or violated local ordinances or housing codes must be resolved by a jury. See *Thompson v. Crownover*, 259 Ga. 126, 129 (4) (381 SE2d 283) (1989); *McDonald*, 220 Ga. App. at 567-568.

2. McCullough contends that a jury must determine whether he failed to exercise reasonable care for his own safety and assumed the risk of injury.

Where the dangerous area is the tenant's only access or only safe and reasonable access to his home, the tenant's equal knowledge of the danger does not excuse the landlord from liability for damages caused by a failure to keep the premises in repair. *Carey v. Bradford*, 218 Ga. App. 325, 326 (2) (461 SE2d 290) (1995). Although Summit claims that by using its unlit stairs, McCullough voluntarily thrust himself into an unsafe activity, McCullough testified that he used the only stairs he had ever used and did not know that an exterior stairwell at the far end of the hall had windows. The diagram of his floor suggests that to reach the other stairwell with which he had no familiarity, McCullough would have had to grope his way down a dark hallway past other apartments to find the stairwell door which lacked a lighted exit sign. To hold as a matter of law that McCullough cannot recover because he assumed the risk of going down the dark stairs which Summit failed to illuminate or that McCullough should have used a more distant stairwell which he had never traversed would eviscerate the landlord's statutory duty to keep the premises in repair. *Carey v. Bradford*, 226 Ga. App. 360 (486 SE2d 623) (1997) (physical precedent only). This we decline to do. See *Richardson v. Palmour Court Apts.*, 170 Ga. App. 204, 207 (316 SE2d 770) (1984). A jury must determine whether McCullough exercised reasonable care for his own safety. *Hull v. Mass. Mut. Life Ins. Co.*, 142 Ga. App. 269, 270 (235 SE2d 601) (1977); see *Robinson v. Kroger Co.*, 268 Ga. 735, 743 (1) (493 SE2d 403) (1997).

*Judgment reversed. Ruffin, J., concurs. Andrews, J., concurs specially.*

ANDREWS, Judge, concurring specially.

I concur in the judgment of the majority opinion, but not in its statement of the record or its analysis of the legal issues.

In the early part of October 1995, severe storms associated with hurricane Opal knocked out power in parts of Atlanta, including the area where the Briarcliff Summit apartments (Summit) were

located. Although McCullough rented an apartment as a residence at Summit, on October 2 and 3 he stayed at his wife's residence, which was located in an area of Atlanta which had power. McCullough returned to his apartment on the night of October 4, even though the area in which Summit was located was still without power, and the apartment building was without power and completely dark. McCullough testified that, if he had known the power was still out at Summit before he arrived there, he probably would have stayed at his wife's residence. The elevators in the building were not operating because of the lack of power. In order to reach his sixth floor apartment, McCullough walked up a darkened stairwell without incident and then felt his way from the stairwell entrance along a hallway for about 40 feet until he reached his apartment where he spent the night. On the morning of October 5 the power was still out in the area, and the building was still unlighted except for natural sunlight through windows. McCullough said he probably left his apartment and walked down the same stairs to the first floor lobby to retrieve a newspaper, then walked back up the stairs to his apartment. The stairwell remained darkened at the time because of the lack of power and the absence of any windows in the stairwell to admit sunlight. Later that morning, McCullough again left his apartment and walked down the same darkened stairwell. This time, however, he lost his footing on the stairs because he could not see in the dark, fell, and was injured.

The darkened stairwell in which McCullough fell on the morning of October 5 was located about 40 feet down the hallway from the door to his apartment. A second stairwell which McCullough could have used to exit the building that morning was located about 80 to 100 feet down the hallway from the door to his apartment. The second stairwell had windows on the exterior of the building and was lighted with natural sunlight on the morning of October 5. McCullough testified that he knew about the second stairwell but had never used it. Despite having lived in the building for five years, he said he was unaware that the second stairwell was lighted by exterior windows.

In the event of power outages, Summit was equipped with an emergency power generator to provide light to the building, including the stairwells. There was evidence that the generator was required by law. When Summit first lost power, the generator worked briefly and restored power, but then failed sometime on October 4. Evidence showed that the generator may have failed because of flooding in the generator room. Evidence also showed that Summit immediately sought to have the generator repaired or replaced, however, it was not repaired or replaced before McCullough fell on October 5. Although the evidence shows that Summit acted diligently in

attempting to repair or replace the generator after it failed on October 4, there was also evidence that Summit knew or should have known prior to October 4 that the generator was at risk of failing because of previous flooding in the generator room.

Obviously, the initial loss of power to the building caused by the severe storms cannot be attributed to any negligence by Summit. There is, however, evidence in the record creating a jury issue as to whether the lack of power to light the building and the stairwells on the morning of McCullough's fall was caused by Summit's negligent failure to provide a reliable emergency generator as required by law. Nevertheless, the general rule is that, even if Summit negligently created and knew about the hazardous darkened condition of the stairwell which caused McCullough's fall, Summit would still not be liable for the fall if McCullough had equal or superior knowledge of the darkened condition of the stairwell. Although a landlord has a statutory duty to keep the premises in repair, the landlord is not an insurer of its tenant's safety. OCGA §§ 44-7-13; 44-7-14; *Standard Mgmt. Co. v. Scott*, 229 Ga. App. 36, 38 (493 SE2d 216) (1997). Even where a landlord negligently allows a hazardous condition to exist on the premises, the landlord is not liable to a tenant injured by the hazard if the tenant had equal or superior knowledge of the hazard. Id. If the tenant was equally aware of the hazard and could have avoided it by the exercise of reasonable care, the case is subject to summary adjudication in favor of the landlord. *Hall v. Thompson*, 193 Ga. App. 574, 575 (388 SE2d 381) (1989). The record clearly shows that McCullough had equal knowledge of the darkened hazardous condition of the stairwell, yet chose to assume the risk of walking the stairs in the dark.

Although application of the "equal or superior knowledge rule" would support the grant of summary judgment in favor of Summit, the record shows that a factual issue precluding summary judgment is presented under the "necessity rule" exception to the "equal or superior knowledge rule." The "necessity rule" tempers application of the "equal or superior knowledge rule" by recognizing that a tenant's equal or superior knowledge of a hazard does not as a matter of law bar recovery against the landlord where a factual question exists as to whether, by necessity, the tenant had no alternative but to assume the risk and traverse a known hazard in order to enter or leave an apartment rented as the tenant's dwelling place. *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 159-160 (335 SE2d 408) (1985).

There is evidence that McCullough was not required to assume the risk of walking down a darkened stairwell to leave his apartment on the morning of October 5. Evidence showed there was another stairwell lighted through exterior windows on the building only 40 to 60 feet down the hallway from the darkened stairwell McCullough

chose to use. But McCullough testified that, although he knew about the other stairwell, he never used it and never became aware during the five years he lived in the building that there were windows on the exterior of the building that provided light in the other stairwell. There was also evidence that McCullough and his wife maintained two residences. Although McCullough maintained a separate residence at Summit, there was evidence from which a jury could conclude that he had the alternative of staying at another residence rather than assuming the risk of the known hazardous conditions at Summit. On the present record, a jury issue was presented as to whether McCullough, by necessity, had no alternative but to assume the risk of traversing the hazardous conditions which caused his fall.

DECIDED APRIL 13, 1999.

*Reid & Morgan, Donald W. Singleton,* for appellant.
*Cobb, Grabbe & Spillers, Nancy L. Pasterz, Nikolai Makarenko, Jr.,* for appellees.