# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| M. GWYN MYLES, individually and as Personal Representative of the Estate of WILLIAM LLOYD MYLES, deceased,<br><br>Appellant/Cross-Respondent,<br><br>v.<br><br>STATE OF WASHINGTON, a governmental entity; JOHN DOE EMPLOYEE(s), employees of the STATE OF WASHINGTON, a municipality; JOHN DOE EMPLOYEE(s) and JANE DOE EMPLOYEE(s), employees of CLARK COUNTY; CARLOS VILLANUEVA-VILLA and JANE DOE VILLANUEVA-VILLA, husband and wife, and the marital community composed thereof, and R.H. BRUSSEAU and JANE DOE BRUSSEAU, husband and wife, and the marital community composed thereof,<br><br>Respondents/Cross-Appellants. | No. 49889-8-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, C.J. — M. Gwyn Myles, on behalf of herself and as personal representative of the

estate of her husband, William Myles,[1] appeals the superior court's orders granting the motions

for reconsideration of its summary judgment rulings and dismissing her complaint against the State

of Washington, Washington State Patrol (WSP) Trooper R.H. Brusseau, and Clark County

---

[1] Because M. Gwyn Myles and William Myles have the same last name, we refer to William by
his first name for the sake of clarity.  We intend no disrespect.

(collectively, the defendants). Myles brought a negligence action against the defendants after William was killed in a collision with a drunk driver, Carlos Villanueva-Villa. The superior court originally denied the defendants' motions for summary judgment, but then granted the defendants' motions for reconsideration and dismissed Myles' complaint.

Because the defendants' actions were not the proximate cause of William's death, summary judgment was proper. And the superior court did not abuse its discretion by granting the motions for reconsideration. Accordingly, we affirm.[2]

## FACTS

On January 27, 2006, William died in vehicle collision caused by Villanueva-Villa. In January 2009, Myles filed a wrongful death lawsuit alleging negligence against the State of Washington, Trooper R.H. Brusseau, and Clark County.[3]

The undisputed facts are that on December 23, 2005, Trooper Brusseau arrested Villanueva-Villa for Driving Under the Influence (DUI). Villanueva-Villa had been arrested for DUI in the previous month. During the December 2005 arrest, a WSP dispatcher told Trooper Brusseau that Villanueva-Villa had an outstanding Clark County warrant for failing to appear for his first DUI. The WSP dispatcher also told Trooper Brusseau that the Clark County Sheriff's

---

[2] The defendants also cross-appealed, arguing that the superior court erred by considering some of the evidence Myles relied on to support her response to their motions on summary judgment. However, because we affirm, we do not address the defendants' cross-appeal.

[3] The complaint also named as defendants the Department of Corrections (DOC) and Villanueva-Villa. In a separate opinion, we held that DOC owed no duty to William and dismissed Myles' claims against DOC. *Myles v. State*, No. 49928-2-II (Wash. Ct. App. July 24, 2018) (unpublished), https://www.courts.wa.gov/opinions/. And apparently, Villanueva-Villa has never responded to the complaint, but he is not a party to this appeal.

Office would not confirm the warrant. Therefore, Trooper Brusseau processed Villanueva-Villa for the DUI, drove Villanueva-Villa to his sister's house, and released Villanueva-Villa. Five weeks later, on January 27, 2006, Villanueva-Villa caused a motor vehicle collision that resulted in William's death.

Myles' complaint alleged that the State and Trooper Brusseau were negligent in failing to arrest Villanueva-Villa on the warrant. The complaint also alleged that Clark County was negligent for failing to confirm the warrant because the jail was full.

On January 22, 2016, the defendants filed motions for summary judgment. The State supported its motion for summary judgment with declarations from Trooper Brusseau and Cary Salzsieder, a communications officer with WSP (dispatcher).

In his declaration, Trooper Brusseau stated that on December 23, 2005, he stopped Villanueva-Villa for speeding. After contacting Villanueva-Villa, Trooper Brusseau noticed several things that indicated Villanueva-Villa was under the influence of intoxicants. After Villanueva-Villa failed field sobriety tests, Trooper Brusseau placed him under arrest. Then Trooper Brusseau moved Villanueva-Villa's car to a safe parking space and contacted the WSP communications center. The WSP dispatcher stated there was an outstanding warrant for Villanueva-Villa for failure to appear in court on a November 26, 2005 DUI charge. The dispatcher then advised Trooper Brusseau that she had contacted the Clark County jail and it would not confirm the warrant or agree to book Villanueva-Villa into jail on the warrant.

Because Clark County jail would not book Villanueva-Villa, Trooper Brusseau took Villanueva-Villa to the WSP office for processing and a breathalyzer test. After processing,

Trooper Brusseau cited Villanueva-Villa for DUI and then transported Villanueva-Villa to his sister's house. In his declaration, Trooper Brusseau explained,

> I did not transport Mr. [Villanueva-]Villa to the Clark County Jail regarding the new arrest as well as the outstanding warrant for failure to appear because the jail refused to verify the warrant or accept him in the jail on the warrant. Because of space limitations, Clark County does not accept most misdemeanors, including DUIs, for booking into the county jail unless the arrest is made in conjunction with a domestic violence arrest. Even if I had transported Mr. [Villanueva-]Villa to the jail for admission of the breathalyzer following his arrest, he would have been released because the Clark County Jail would not have accepted him for this offense, as it was only accepting felony arrests for booking at that time. Even if the jail had accepted him, which they indicated they would not, a DUI charge is a book and release offense, meaning that Mr. [Villanueva-]Villa would have been immediately released to the custody of a friend or relative.

Clerk's Papers (CP) at 133.

In December 2005, Salzsieder was a communications officer with WSP. Salzsieder declared that she contacted the Clark County jail to verify Villanueva-Villa's warrant and asked if it would accept Villanueva-Villa for booking. She stated, "In this call the jail refused to confirm the warrant and refused to accept Mr. [Villanueva-]Villa into the jail on the misdemeanor warrant." CP at 28. She relayed this information to Trooper Brusseau.

Clark County supported its motion for summary judgment with the declaration of Ric Bishop. Bishop was the Chief Deputy overseeing the Corrections branch of the Clark County Sheriff's Office. Bishop declared that on December 23, 2005, the jail's population was 772. Bishop stated that under the jail's overcrowding policy, the jail would have requested that officers cite and release non-sex offender misdemeanants. However, officers could request that a non-sex offender misdemeanant be booked and released by the jail. "In this situation, an offender who would not normally be brought to the jails(s) [sic] as a result of the jail's overcrowding policy restrictions can be booked into the jails(s) [sic] and released immediately thereafter." CP at 42.

4

Bishop also reviewed Villanueva-Villa's records and determined that Villanueva-Villa's total bail would have been $20,000 if he had been booked into the jail. Therefore, Villanueva-Villa could have secured immediate release on bond for $2,000. Bishop also declared that, in 2005, the average length of stay for individuals booked into the jail was 17.49 days. And, in 2006, the average length of stay was 18.12 days.

In response to the motions for summary judgment, Myles relied on several of Villanueva-Villa's criminal records. Most of these records documented Villanueva-Villa's history of failure to comply with Department of Corrections (DOC) supervision for a 2003 vehicle prowl conviction. Myles also included a docket entry for Villanueva-Villa's DUI charges, which showed that he was arraigned after he was arrested and charged with the William's death. The docket entry also showed that the court imposed conditions on Villanueva-Villa including breath and urine testing, no alcohol or drug use, and Antabuse if medically able.

On October 7, 2016, the superior court denied the defendants' motions for summary judgment. On October 17, the defendants each filed motions for reconsideration. The superior court heard oral argument on the motions for reconsideration on December 2. The superior court granted the defendants' motions for reconsideration and dismissed Myles' complaint.

Myles appeals the superior court's granting of the defendants' motions for reconsideration.

ANALYSIS

A.   STANDARDS OF REVIEW

We review the superior court's order granting summary judgment de novo. *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any

genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "'A material fact is one upon which the outcome of the litigation depends.'" *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004) (quoting *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)). When determining whether a genuine issue of material fact exists, this court considers all the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Vargas*, 194 Wn.2d at 728. Summary judgment is proper if, after reviewing all the evidence, a reasonable person could reach only one conclusion. *Vargas*, 194 Wn.2d at 728.

When the defendant files a motion for summary judgment showing the "'absence of evidence to support the [plaintiff]'s case,'" the burden shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The nonmoving party cannot rely on "'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). The nonmoving party must present more than "'[u]ltimate facts'" or conclusory statements to defeat summary judgment. *SentinelC3 v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014) (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017)). If the plaintiff "'fails to make a showing sufficient to establish the existence of the element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. *Young*, 112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322).

6

However, we review orders on motions for reconsideration for an abuse of discretion. *Fed. Home Loan Bank of Seattle v. RBS Sec., Inc.*, 3 Wn. App. 2d 642, 648, 418 P.3d 168 (2018), *vacated in part on other grounds on remand*, No. 76326-1-I (Wash. Ct. App. Mar. 16, 2020) (unpublished), https://www.courts.wa.gov/opinions/. The superior court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Fed. Home Loan Bank*, 3 Wn. App. 2d at 648.

In a negligence action, the plaintiff bears the burden of proving four elements: "(1) the existence of a duty to the person alleging negligence, (2) breach of that duty, (3) resulting injury, and (4) proximate cause between the breach and the injury." *Nguyen v. City of Seattle*, 179 Wn. App. 155, 164, 317 P.3d 518 (2014). Myles argues that summary judgment was not appropriate because the defendants owed William a duty and their actions were the proximate cause of William's death. We hold that summary judgment was proper because, even assuming without deciding that defendants owed William a duty to execute the warrant, Myles cannot show a genuine issue of material fact that Trooper Brusseau's and Clark County's actions were the proximate cause of William's death.

B.    PROXIMATE CAUSE

Proximate cause has two elements: (1) cause in fact and (2) legal cause. *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016). "'Cause in fact refers to the "but for" consequences of an act—the physical connection between an act and an injury.'" *N.L.*, 186 Wn.2d at 437 (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). Generally, cause in fact is a question for the jury. *N.L.*, 186 Wn.2d at 437. But "when reasonable minds could reach

but one conclusion, questions of fact may be determined as a matter of law." *Hartley*, 103 Wn.2d at 775.

Cause in fact may not be based on mere speculation. *Estate of Bordon v. Dep't of Corr.*, 122 Wn. App. 227, 241-42, 95 P.3d 764 (2004). The plaintiff must have some evidence to establish proximate cause. *See Bordon*, 122 Wn. App. at 241-42. It is improper to require a jury to guess what *may* have happened if circumstances had been different. *See Bordon*, 122 Wn. App. at 241-42. In *Bordon*, the court explained,

> Bordon cites to several parts of the record she claims support factual causation, but the testimony she refers to only supports a finding that DOC did not report the driving condition violation to the trial court and "some violations" may be punishable with up to 15 days in jail. Bordon did not present evidence about when a violation report would have been filed or when it would have been heard. She offered no testimony about whether the violation would have been pursued or proved. Nor did she present evidence or testimony, expert or otherwise, suggesting that the court would have sentenced Jones to additional jail time if DOC had reported that Jones violated the driving condition . . . or that the jail time would have encompassed the date of the accident. This lack of evidence requires a jury to guess not only whether and when the violation would have been pursued but also whether a judge would have done something differently if he or she had known about the violation and what that different result would have been.

122 Wn. App. at 241-42 (footnotes omitted).

"Legal cause 'is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *N.L.*, 186 Wn.2d at 437 (quoting *Crowe v. Gaston*, 134 Wn.2d 509, 518, 951 P.2d 1118 (1998)). "'In deciding whether a defendant's breach of duty is too remote or insubstantial to trigger liability as a matter of legal cause, we evaluate mixed considerations of logic, common sense, justice, policy, and precedent.'" *N.L.*, 186 Wn.2d at 437 (internal quotation marks omitted) (quoting *Lowman v. Wilbur*, 178 Wn.2d165, 169, 309 P.3d 387 (2013)). When the

facts are not in dispute, legal causation can be decided by this court as a question of law. *N.L.*, 186 Wn.2d at 437.

1.      Cause in Fact

Myles argues that there is a genuine issue of material fact as to whether Trooper Brusseau's and the County's actions were the proximate cause of William's death. Myles contends that a reasonable person could find that if Trooper Brusseau had brought Villanueva-Villa to the jail to be booked on the warrant, Villanueva-Villa would have either been in custody or under conditions that would prevent him from drinking and driving when William was killed.

As to cause in fact, these arguments are based exclusively on pure speculation and, therefore, could be decided on summary judgment. Myles argues that Villanueva-Villa could have been in jail more than a month later when he caused the accident that killed William. But there is no evidence in the record supporting this. All the evidence shows that regardless of whether he was brought to the jail, Villanueva-Villa would have been booked and released on the DUI and the DUI warrant. Therefore, Villanueva-Villa would not have be in jail more than a month later. And given that Villanueva-Villa has historically failed to appear for court hearings, it is only speculation to say he would have appeared in court for the court to impose conditions on him. And it requires further speculation to say that Villanueva-Villa would have complied with those conditions.

Here, there is simply no evidence, only mere speculation, that establishes that "but for" the failure to book Villanueva-Villa on the warrant, Villanueva-Villa would not have caused the accident that killed William five weeks later. Pure speculation cannot defeat a motion for summary judgment. *Seven Gables Corp.*, 106 Wn.2d at 13; *Bordon*, 122 Wn. App. at 241-42. Therefore,

Myles cannot show a genuine issue of material fact that Trooper Brusseau's and Clark County's actions were the cause in fact of William's death.

2.     Legal Causation

Even if we determine there is a genuine issue of material fact as to whether Trooper Brusseau's and Clark County's actions were the cause in fact of William's death, we hold that, as a matter of law, the relationship between the defendants' actions and William's death is too attenuated to establish legal causation.

Here, the contact between Trooper Brusseau and Villanueva-Villa took place five weeks before the accident that killed William. The defendants had no ongoing contact with Villanueva-Villa, and Trooper Brusseau took action to ensure that Villanueva-Villa was safely delivered to a family member before releasing him from custody. Unlike situations like *Bailey v. Town of Forks*, in which the officer directed an intoxicated individual to leave the scene and that individual got into an accident almost immediately thereafter, there is no policy reason to extend the defendants liability past their specific contact with Villanueva-Villa. 108 Wn.2d 262, 264-65, 737 P.2d 1257 (1987). As a matter of logic and common sense, the defendants could not continue to be responsible for the individual choices Villanueva-Villa made weeks after their contact with him.

For example, in *Hartley*, our Supreme Court held that failure to revoke an offender's driver's license as a habitual traffic offender was too remote and insubstantial to impose liability for that person's drunk driving. 103 Wn.2d at 768. The court explained,

> In the case before us, however, neither the State nor County falls within these boundaries of legal causation, even assuming the validity of plaintiffs' factual allegations. Johnson's drunk driving was cause in fact and the legal cause of Mrs. Hartley's tragic death. This is not to say that there cannot be more than one party who is legally liable; . . . but here the failure of the government to revoke Johnson's

license is too remote and insubstantial to impose liability for Johnson's drunk driving.

. . . .

While a license is necessary for anyone wishing to drive an automobile legally in this state, a license does not grant authority to disobey the law. . . . The failure to revoke Johnson's license (even assuming that Johnson would have honored the revocation and not driven) is too attenuated a causal connection to impose liability.

*Hartley*, 103 Wn.2d at 784-85.

The same reasoning applies here. The only action the evidence proves would have happened if Trooper Brusseau brought Villanueva-Villa to the jail is that he would have been booked and released with a court date. And there is no guarantee that Villanueva-Villa would have appeared on his court date, that the court would have imposed any specific conditions on him, or that Villanueva-Villa would have complied with those conditions. Like in *Hartley*, the defendants' actions here are extremely attenuated from Villanueva-Villa's actions more than a month after he was arrested for a second DUI on December 23, 2005. Accordingly, we determine that, as a matter of law, the defendants' failure to book Villanueva-Villa on the DUI warrant was not the legal cause of William's death.

C.    MOTIONS FOR RECONSIDERATION

Finally, Myles argues that the superior court abused its discretion by granting the motions for reconsideration because of the defendants' failure to comply with superior court and local court rules. We disagree.

First, Myles argues that the superior court abused its discretion by allowing the defendants to have a second chance to argue their case without presenting new evidence. But this argument lacks merits. As Myles recognizes, CR 59(a)(7) allows a motion for reconsideration on the grounds "[t]hat there is no evidence or reasonable inference from the evidence to justify the verdict

or the decision, *or that it is contrary to law*." (Emphasis added.) There is no requirement that the defendants present new evidence. Instead, the defendants asked the superior court to reconsider its decision on the grounds that the decision was contrary to law. The superior court did so. There was no abuse of discretion.

Second, Myles argues that the trial court abused its discretion by not hearing the motions for reconsideration in a timely manner. CR 59(b) provides,

> A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

Myles contends that the reconsideration hearing was improper because it was heard more than 30 days after the order denying summary judgment was entered and there was no order from the superior court allowing the hearing to be set outside the 30 day timeline. However, Myles does not dispute that it was the superior court who set the hearing.

CR 59(b) does not require that the superior court enter a specific order directing the motion be set outside the 30 day period. Furthermore, "[t]rial courts have the inherent authority to control and manage their calendars, proceedings, and parties." *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012). And CR 59(b) specifically provides for this discretion. It is not manifestly unreasonable or untenable for the superior court to set and hear a motion for reconsideration outside of the 30 days provided by the rule if the superior court chooses to do so.

Third, Myles argues that the superior court failed to comply with Clark County Superior Court's Local Rule (LCR) 59, which prohibits oral argument without express approval of the court and requires a written ruling on the motion. Here, the superior court gave express approval by allowing the motion to be set for oral argument and by allowing the parties to present oral argument

on the motions for reconsideration. And by entering written orders granting the motions for reconsideration, the superior court did enter written rulings on the motions. Therefore, the record does not support Myles' contention that the superior court failed to comply with LCR 59.

The superior court did not abuse its discretion in granting the motions for reconsideration because summary judgment was proper as matter or law. And the procedural errors Myles raises with regard to the motions for reconsideration do not show an abuse of discretion. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Glasgow, J.