A00A2060. VILLAREAL et al. v. TGM EAGLE'S POINTE, INC.
(547 SE2d 351)

Ruffin, Judge.

On May 9, 1997, an electrical fire at the Eagle's Pointe apartment complex destroyed eight apartments. The tenants who lost their belongings in the fire sued TGM Eagle's Pointe, Inc. (TGM), the property management company, alleging that TGM knew about the electrical problem that caused the fire, yet negligently failed to repair it. TGM moved for summary judgment, and the trial court granted its motion. The tenants appeal, and, for reasons that follow, we affirm.

A trial court properly grants a motion for summary judgment when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[1] On appeal of a grant of summary judgment, we conduct a de novo review, and we view the evidence in the light most favorable to the nonmoving party.[2]

So viewed, the record establishes that the Villareal family lived at Eagle's Pointe in apartment 1709. On May 9, 1997, 15-year-old Maria Villareal woke early to get ready for school. Maria opened the porch door to check the weather and turned the switch for the porch light, which was located in the living room of the apartment. The switch emitted a spark, and Maria turned the light off. At that time, Maria did not smell anything burning, and she continued getting ready for school and left approximately 15 to 20 minutes later. As she was leaving, Maria smelled smoke, but could not tell where it was coming from. Shortly thereafter, the residents of the 1700 building discovered that the building was on fire. Although no one was

---

[1] *Leal v. Hobbs,* 245 Ga. App. 443 (538 SE2d 89) (2000).
[2] Id.

injured, the residents of eight apartments lost personal property in the fire.

Several investigators examined the burned apartment building to determine what caused the fire. According to fire investigator Thomas Morrill, the fire started on the porch of apartment 1709. Morrill was unable to determine the exact source of the fire, but he did not believe that the spark that Maria saw caused it because she never reported seeing any glow or flames coming from the switch.

William Barrett, a fire and arson investigator for Gwinnett County, examined the burned apartment on the morning of the fire. Barrett determined that the fire originated in the wall between the porch and the living room of apartment 1709 and that the fire was "consistent with an electrical malfunction." However, Barrett could not state definitively whether the spark started the fire.

Fire investigator William Dodd also examined the apartment. He agreed with Barrett that the fire was caused by an electrical malfunction in the common wall between the living room and the porch. However, Dodd did not believe that the spark seen by Maria could have caused the fire. Dodd testified that "[a] spark doesn't generate sufficient heat for a long enough period of time to cause ordinary combustibles to ignite." But Dodd also testified that sparking indicates a problem with the switch such as a bad connection and that, over time, this can create a fire hazard.

The tenants sued TGM, alleging that, despite repeated complaints of electrical problems in the 1700 building, it negligently failed to address the problem. TGM moved for summary judgment, arguing that it had no notice of any electrical problems in the apartment rented by the Villareals. The trial court concluded that TGM did not have either actual or constructive notice of an electrical problem in apartment 1709 and granted summary judgment to TGM. On appeal, the tenants assert that the trial court erred in granting TGM's motion for summary judgment. We disagree.

"While a landlord is under a statutory duty to keep the premises in repair, a landlord is not an insurer of its tenants' safety."[3] However, if a landlord receives notice that the premises are not in repair, it has a duty "to inspect and investigate in order to make such repairs as the safety of the tenant requires."[4] If, after receiving such notice, the landlord fails to repair the premises within a reasonable time, the landlord is then charged with notice of all defects that an

---

[3] (Citations and punctuation omitted.) *Standard Mgmt. Co. v. Scott*, 229 Ga. App. 36, 38 (493 SE2d 216) (1997).

[4] (Citation omitted.) *Davis v. All-State Homes & Properties*, 233 Ga. App. 60, 61 (503 SE2d 331) (1998).

inspection would have disclosed.[5] However, "[n]otice of separate and independent patent defects, in no way connected with a latent defect which is alleged to have occasioned the injury sued for, is not constructive notice of the latter defect."[6]

Here, the evidence suggests that the fire was caused by an electrical malfunction in an interior wall of the Villareals' apartment. It is undisputed that, prior to the fire, the Villareals never reported any electrical problems in their apartment. Additionally, there is no evidence of any electrical code violations in wiring of the apartments in the 1700 building. However, the plaintiffs contend that TGM had notice of serious systemic electrical problems in that building and that, if TGM had properly inspected the building, it would have discovered the problem in the Villareals' apartment. Thus, the issue is whether the evidence of electrical problems in some apartments was sufficient to put TGM on notice of a possible problem in all apartments.

The record demonstrates that all of the apartments at Eagle's Pointe had separate electrical systems, separate circuits with separate breakers, and separate meters. Nevertheless, out of the eight apartments that burned, the residents of five of those apartments reported electrical problems in the months leading up to the fire. According to the residents of apartment 1710, the stove would make a popping sound when turned on and the lights in the apartment would go on and off. Evidently, the management company repaired the breaker, which corrected the problem of all the lights turning off. However, the tenants continued to have problems with two lamps in the living room that would turn off for no apparent reason.

The residents of apartment 1711 also had electrical problems. Specifically, a few weeks before the fire, the lights in the apartment turned off for no reason. In response to the residents' complaint, a maintenance man inspected all of the switches in the apartment and replaced the master circuit breaker. After this repair was made, the residents did not notice any other electrical problems.

In apartment 1712, the residents complained that turning on a hair dryer plugged into the bathroom wall would often cause the circuit to break, which, in turn, caused lights to go off. Also, the residents testified that the lights would sometimes go off even if the hair dryer was not turned on. The residents further stated that several electrical outlets were faulty, including one in a bedroom that would "shock" anyone attempting to plug something into it.

The residents of apartment 1714 complained of similar electrical

---

[5] Id.

[6] (Punctuation omitted.) *Tribble v. Somers*, 115 Ga. App. 847, 849 (156 SE2d 130) (1967).

problems. As in apartment 1712, the residents discovered that plugging either a hair dryer or electric razor into the bathroom outlet could cause the circuit to break. Also, on several occasions, the lights in the living room turned off for no apparent reason.

Finally, the residents of apartment 1715 complained of numerous electrical problems, including the porch light that would occasionally not work, outlets that did not function, a living room lamp that would sporadically turn off, and problems with the lights in the kitchen and bathroom.

The plaintiffs retained Kenneth Cunningham, an electrical contractor, who, after reviewing the fire marshal's report and a list of the tenants' complaints, rendered an opinion about the nature of the electrical problems in the 1700 building. According to Cunningham, he noticed a recurring complaint with regard to "one circuit in particular, the bathroom combination living room circuit."[7] In his deposition, Cunningham testified that, in the 1970s, building standards changed such that bathrooms were on a separate circuit. In older buildings, however, bathrooms could share a circuit with other rooms, which could lead to a circuit overload. Based on the complaints of short circuiting, Cunningham concluded that the apartments likely shared a circuit between the living room and bathroom. Cunningham further testified that this likely caused an overloading of the system, which resulted in the lights going off and on in the apartments. However, Cunningham could not say that the problems in this circuit caused the fire. Also, when asked if he believed that "the entire apartment complex had systemic electrical problems," Cunningham responded, "[m]y opinion is it could."

Despite Cunningham's somewhat equivocal deposition testimony, in his affidavit, he concluded that (1) the tenants' complaints were serious, safety-related complaints; (2) the electrical problems were systemic rather than isolated; and (3) if TGM had conducted a "reasonably diligent" investigation into the cause of the problems, it "more probably than not" could have prevented the fire. Even construing this evidence in favor of the plaintiffs, as we do on summary judgment,[8] we agree that TGM is entitled to summary judgment.

The fact that TGM may have known about electrical problems in some apartments does not give rise to a duty to inspect all apartments, including those apartments that had no electrical problems.[9]

---

[7] Although the plaintiffs do not say whether the porch light switch was on this circuit, according to Maria Villareal, the porch light switch was in the living room.

[8] See *Hemphill v. Johnson*, 230 Ga. App. 478 (497 SE2d 16) (1998).

[9] See *Dyer v. Wight*, 163 Ga. App. 63, 64 (293 SE2d 723) (1982) (where tenant never informed landlord of any needed repairs, landlord had no duty to inspect apartment); see also *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319-320 (1) (277 SE2d 312) (1981).

This is especially true where, as here, the apartments have separate electrical systems, separate circuits, separate meters, and separate breakers.[10] As this Court has recognized,

> ordinary care in the fulfillment of [a] landlord's duty to keep the premises in repair does not . . . embrace an affirmative duty to make such an inspection of the premises as will disclose the existence of any and all latent defects which may actually exist therein.[11]

Moreover, even if TGM did have a duty to inspect all apartments, the plaintiffs' claims still fail because they are unable to establish proximate cause. "Both negligence and proximate cause must be present before liability arises."[12]

In this case, the evidence suggests that the fire stemmed from damaged electrical wire or a faulty switch. According to Cunningham, a sparking switch is a sign that a "switch is going bad and it should be replaced." Similarly, Dodd testified that a spark from a switch is an "indication you've got a problem." Dodd also testified that, to confirm the presence of such damage, one would have to visually inspect behind the plate. According to Cunningham, however, "[i]f a light switch appears to be functioning properly and no spark is seen," there would be no reason to look behind the plate.

Here, the first time anyone saw a spark coming from the switch where the fire appears to have started was the morning of the fire. Thus, prior to that date, there would have been no reason to look behind that particular plate. It follows that, even if TGM had inspected the apartment, it would not necessarily have discovered any defect in the switch. Accordingly, the plaintiffs' contention that an inspection would have prevented the fire is based upon mere speculation, which is insufficient to show proximate cause or to withstand summary judgment.[13] Under these circumstances, the trial court did not err in granting TGM's motion for summary judgment.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[10] Cf. *Tribble,* supra (notice of defects in one area of porch does not provide notice of defects in another area of porch).

[11] (Citations and punctuation omitted.) *Harris v. Sloan,* 199 Ga. App. 340, 341-342 (1) (405 SE2d 68) (1991).

[12] *Wadkins v. Smallwood,* 243 Ga. App. 134, 138 (3) (530 SE2d 498) (2000).

[13] See *Johnson v. Dept. of Transp.,* 245 Ga. App. 839, 841 (538 SE2d 879) (2000); see also *Noble v. Nieznany,* 239 Ga. App. 547, 548 (1) (521 SE2d 472) (1999) (summary judgment proper where defect that caused fire would not have been "detected by ordinary visual inspection").

DECIDED MARCH 23, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001.

*Chad A. McGowan, Lynda W. Orr*, for appellants.
*Swift, Currie, McGhee & Hiers, John F. Blount, Mark T. Dietrichs*, for appellee.