## A03A1021. PENNINGTON v. WJL, INC.

(589 SE2d 259)

RUFFIN, Presiding Judge.

Thomas W. Pennington, Jr. sued WJL, Inc. d/b/a Savannah Port Warehouse (WJL), alleging that he was injured when he tripped on WJL's premises. WJL filed a motion for summary judgment, arguing, inter alia, that Pennington failed to show that the condition of the premises was the proximate cause of his injury. The trial court granted WJL's motion. Pennington appeals, asserting that the trial court failed to consider all the evidence in the record in the light most favorable to Pennington and that it wrongly distinguished this case from our decision in *Williams v. EMRO Marketing Co.*[1] For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law.[2] On appeal, we review the grant of summary judgment de novo, construing the evidence and all inferences in the light most favorable to the nonmoving party.[3]

Viewed in this light, the record shows that in September 1999, Pennington started his own business. His business was to unpack large cartons of Noritake china and to repackage the china into smaller gift cartons, which would then be shipped to retailers. Noritake stored the china in warehouse space owned by WJL. On a regular work day, Pennington obtained the large boxes of china from the warehouse, transported them by forklift to another area where he worked, repackaged the china, and stored the smaller boxes in the warehouse.

When Pennington arrived at the warehouse on October 16, 1999, he drove a forklift to the warehouse to get the china. He parked the forklift near the front of a garage door that opened by pulling on a chain. Pennington had never had to open the door; on the days prior to his injury the door had always been open. He tried to raise the door from the outside. When the door would not move, Pennington entered the warehouse through another door. It was dark inside except for light coming from the skylights. He went to the door he had tried to open and slid the bolt back to unlock the door. He tried to open the door by pulling on the chain with his right hand. He felt a "loss of balance" and reached his left arm out to catch himself.

Pennington does not recall feeling his feet strike anything. He only recalls the "feeling of falling." He felt his shoulder being pulled hard and then saw that his fingers had been severed. He put his

---

[1] 229 Ga. App. 468 (494 SE2d 218) (1997) (physical precedent only).

[2] See *Villareal v. TGM Eagle's Pointe*, 249 Ga. App. 147 (547 SE2d 351) (2001).

[3] See id.

right hand around his left wrist to stop the bleeding, then went to find Michelle Durden, a woman who worked with him, to wrap his wrist. He also asked her to retrieve his fingers. Durden went inside the warehouse and picked up the parts of Pennington's hand. She saw several hoses in a pile on the floor just inside the door and she had to kneel down on them to pick up the parts of Pennington's hand.

When the EMTs arrived at the scene, Pennington answered all of their questions and did not appear to be in shock. He told the EMT that his fingers were torn off by an overhead door. He told Officer Harrelson, a policeman at the scene, that he had tried to open the door, but when he pulled the chain it "snatched" and severed his fingers. Officer Harrelson does not recall Pennington saying anything about falling or anything about hoses. Pennington told another worker that he was trying to pull the chain on the door and when it "let go" it took his fingers with it. Pennington does not remember what he told anyone on the day of the injury.

Pennington has no memory of his feet making contact with the hoses. He also cannot recall seeing the hoses.[4] However, based on his review of photographs taken by his brother several days after the accident, in which he noticed the hoses almost directly underneath the side railing of the door where his finger parts were found, he thinks that common sense and logic dictate that the hoses caused him to fall because the hoses seemed to be the only explanation.

WJL moved for summary judgment, asserting, inter alia, that Pennington failed to establish a causal connection between the injury to his hand and any unsafe condition on the premises. Pennington responded, asserting that WJL's negligence in leaving the hoses on the floor was the reason for Pennington's injury. Pennington admitted that the direct evidence of causation was "weak" because Pennington was in a state of shock after the injury and that his memory was cloudy. However, Pennington argued that there was "ample circumstantial evidence" to show a causal link, citing the testimony of Pennington that he had the "feeling of falling" and the testimony of Durden that the hoses were lying on the ground where she located Pennington's fingers. Pennington also cites the testimony of his brother, who allegedly tripped over the hoses when he went to take pictures of the accident scene.

After considering the briefs and argument, the trial court granted summary judgment to WJL. The court recognized the severity of Pennington's injury but found that there was no genuine issue of material fact with regard to the issue of proximate cause. In so rul-

---

[4] Prior to the injury, every time Pennington went into the warehouse, he saw the hoses lying inside the door.

ing, the court relied upon *Shadburn v. Whitlow.*[5] In *Shadburn*, we upheld the grant of summary judgment to the defendants on Shadburn's personal injury claims.[6] In that case, the witnesses and Shadburn were not certain what had caused someone to fall into Shadburn at the top of a flight of stairs, but they all believed that loose carpeting at the top of the stairs was the cause.[7] We determined that there was no evidence in the record as to the cause of Shadburn's fall and that causation cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.[8]

1. Causation is always an essential element in slip or trip and fall cases.[9] Where the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven.[10] A mere possibility of causation is not enough and when the matter remains one of pure speculation or conjecture and the probabilities are at best evenly balanced it is appropriate for the court to grant summary judgment to the defendant.[11]

Pennington's sole argument that the court did not view all the evidence in the light most favorable to him is that the trial court should have interpreted Pennington's testimony that he recalled the "feeling of falling" to mean that he tripped over something. Not only does he fail to cite any law in support of this argument, the record simply does not support such an interpretation. Pennington has no memory of his feet striking anything, and there is no evidence that Pennington actually tripped. We refer to Pennington's deposition testimony that he "may have stumbled on the hoses going towards the door" and that he had experienced a similar "feeling of falling" when tripping over something. However, when he was asked whether he knew for sure whether he had tripped, Pennington responded "no" and that it just seemed "common sense" to him. Such speculation does not support Pennington's argument, and we find that the trial court properly viewed all evidence in the light most favorable to Pennington.

2. With respect to Pennington's argument that the court wrongly distinguished this case from our decision in *Williams*, we note that *Williams* is physical precedent only, and as such is not binding.[12]

---

[5] 243 Ga. App. 555 (533 SE2d 765) (2000).
[6] Id. at 556-557.
[7] Id.
[8] Id.
[9] See *Moore v. Teague*, 255 Ga. App. 220 (564 SE2d 817) (2002).
[10] See id.
[11] See *Jackson v. K-Mart Corp.*, 242 Ga. App. 274 (529 SE2d 404) (2000).
[12] See Court of Appeals Rule 33 (a).

However, even if binding, we agree with the trial court that it is distinguishable.

In *Williams*, a slip and fall case, the plaintiff never saw what he slipped on, but he *knew* that he had slipped.[13] Although the plaintiff never saw any ice, he recalled that the area felt slick beneath his feet, and a witness who helped him after his fall testified that he assisted the plaintiff from the " 'iced area.' "[14] We found that the plaintiff's lack of knowledge as to what he had slipped on was not dispositive and that there was sufficient circumstantial evidence that the ice he landed on caused his fall.[15] Accordingly, we reversed the trial court's granting of the defendant's motion for summary judgment.[16]

Here, on the other hand, there is no evidence that Pennington actually tripped; the only causation evidence is the presence of the hoses at the scene and Pennington's speculation after the fact that he must have tripped over the hoses. Again, Pennington does not recall his feet striking anything, and on the day of the incident, he made no mention of hoses or tripping over hoses. Moreover, the "ample circumstantial evidence" cited by Pennington (i.e., Pennington's testimony that he had the "feeling of falling," the location of Pennington's fingers on top of the hoses, and his brother's experience with the hoses) is nothing but mere speculation and conjecture with respect to causation, and thus cannot defeat summary judgment.[17]

We agree with the trial court that Pennington's injury was severe. However, the record does not reflect a genuine issue of material fact as to causation. Accordingly, we affirm the granting of summary judgment to WJL.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED OCTOBER 9, 2003 —
RECONSIDERATION DENIED OCTOBER 24, 2003 — ▮▮▮▮▮▮

*Dennis G. Dozier*, for appellant.
*Weiner, Shearouse, Weitz, Greenberg & Shaw, Edwin R. Byck, Malcolm Mackenzie III*, for appellee.

---

[13] See *Williams*, supra at 469-470.
[14] Id. at 470.
[15] Id.
[16] Id.
[17] See *Jackson*, supra.