IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JAMES F. BEHLA, | ) | No. 36276-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| R.J. JUNG, LLC, a Washington Limited | ) | |
| Liability Company; JENNIFER JUNG and | ) | |
| JOHN DOE JUNG, and the marital | ) | |
| community thereof, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. —

   *We have frequently said that, if there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred.* Gardner v. Seymour, *27 Wn.2d 802, 809, 180 P.2d 564 (1947).*

This appeal asks whether a claimant presents a question of fact as to causation of injuries in order to defeat the defendant's summary judgment motion. The claimant lost awareness from a fall and found, when he regained consciousness, a coiled cable near him. He asserts that the cable caused his fall. Because of these facts and other attended

facts, we answer the question in the affirmative. We reverse the summary judgment

dismissal granted the claimant's landowner in a premises liability suit based on the

stretching of the cable across a parking lot.

FACTS

This appeal arises from injuries sustained by James Behla on the evening of March

2, 2014, when he fell on property owned by R.J. Jung LLC (R.J. Jung). Behla sues R.J.

Jung and its owner, Jennifer Jung, in negligence. We refer to the defendants collectively

as R.J. Jung. The dispute between the parties on appeal concerns the cause of the fall.

Since the early 2000s, James Behla has operated a rafting guide service on the

White Salmon River. Beginning in the early 2000s, Behla frequently shopped at White

Salmon's BZ Corner Grocery Store, then owned by the Gross family. The Gross family

kept a shed on the edge of the parking lot, which shed the family offered to permit Behla

to use if he repaired it. Behla repaired the shed, installed lighting in and outside of the

building, and laid gravel for a parking lot on both sides of the shed. Thereafter he used

the shed to store rafting equipment for his business. Behla parked a bus near the shed.

Presumably he employed the bus to ferry customers along the river.

In approximately 2003, R.J. Jung, owned by Jennifer Jung and her now deceased

husband, purchased BZ Corner Grocery Store. R.J. Jung thereafter rented the shed to

James Behla for $1,000 annually. In 2013, Behla, at the direction of R.J. Jung, moved his bus so that Jung could place a recreational vehicle in the lot. R.J. Jung desired employees to use the RV. Behla moved the bus nearer to his storage shed.

On March 2, 2014, at 10:00 p.m., James Behla went to his shed on R.J. Jung's property to perform inventory and move rafting equipment. One inch of snow blanketed the ground. The only light shone from gas pumps 150 feet away from the shed. Behla ambled to the shed to activate an exterior light switch on the outside of the building. Behla flipped the light switch, but no lights appeared. He then sauntered toward the bus to check its locks. After checking the locks, Behla returned to the shed. According to Behla:

> And—and I turned and walked back to the walk-through door of the building. Next thing I knew, I was lying on the ground with a stabbing, like a knife in the back, of my lower spine, my head banged up, my shoulder aching and blood coming out wherever.

Clerk's Papers (CP) at 52.

James Behla regained consciousness on a concrete slab in front of the shed door. Behla's right hip struck the slab. His body lay in a skiff of snow on the gravel.

After realizing that he fell and sustained injuries, James Behla scanned the area to determine the cause of his fall. He saw a black cable the diameter of his thumb. This cable ran 125 feet and sent power between the shed's breaker box and the recreational

3

vehicle parked on the R.J. Jung property. Behla did not see the cable before falling, but, when examining it after, saw that part of the cable curled and rose above the ground. After viewing the cable, Behla concluded: "my foot caught it, and it pitched me forward, and my head hit first and then my left hand and arm and then my butt and back hit the concrete slab, and I was laying on my right side." CP at 27. Behla testified in his deposition:

> I am not certain, 'cause I never saw it [the cable] until I woke up on the ground and went back and looked to see what I had tripped over. . . .

CP at 53. The coiled cable rose high enough for his foot to catch thereon. Behla did not directly testify that the cable lay in the pathway that he tread to the shed, but we draw reasonable inferences from other testimony and from photographs to reach this factual conclusion for purposes of R.J. Jung's summary judgment motion.

## PROCEDURE

James Behla sued R.J. Jung and Jennifer Jung for failure to exercise reasonable care in maintaining the rented premises. R.J. Jung filed a motion for summary judgment dismissal and argued that Behla cannot prove proximate causation because his theory of liability relies on conjecture. R.J. Jung did not argue the impossibility of Behla's tripping on the cable, but contended that other causes were as likely the cause of the fall. The trial court granted R.J. Jung's summary judgment motion.

4

No. 36276-1-III
*Behla v. R.J. Jung, LLC*

LAW AND ANALYSIS

The principal question on appeal is whether James Behla presents an issue of fact, in order to defeat R.J. Jung's summary judgment motion, as to whether the cable stretched across R.J. Jung's parking lot caused Behla's trip and fall. We rule that Behla presents a genuine question of fact.

James Behla sues R.J. Jung in negligence. A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Proximate cause consists of two elements: cause in fact and legal causation. *Albertson v. State*, 191 Wn. App. 284, 296, 361 P.3d 808 (2015). In support of its summary judgment motion, R.J. Jung relies only on a lack of cause in fact. Even if the complainant establishes negligence, the defendant may not be held liable unless its negligence caused the accident. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 378, 972 P.2d 475 (1999).

Cause in fact, or "but for" causation, refers to the physical connection between an act and an injury. *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985). The

5

plaintiff must establish that the harm suffered would not have occurred but for an act or omission of the defendant. *Joyce v. Department of Corrections*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005).

A ubiquitous term found in the case law of causation is the word "speculation." Many decisions rest on this word. R.J. Jung argues that James Behla speculates when contending that the black cord caused his fall and injuries.

Evidence establishing proximate cause must rise above "speculation, conjecture, or mere possibility." *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995). "Speculation" and "conjecture," in this context, mean the same thing. *Frescoln v. Puget Sound Traction, Light & Power Co.*, 90 Wash. 59, 63, 155 P. 395 (1916). The plaintiff cannot rest a claim for liability on a "speculative theory." *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 381, (1999). The plaintiff must supply proof for a reasonable person to, "without speculation," infer that the act of the other party more probably than not caused the injury. *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 781, 133 P.3d 944 (2006). Cause in fact does not exist if the connection between the act and the later injury is "indirect and speculative." *Estate of Borden ex rel. Anderson v. State, Department of Corrections*, 122 Wn. App. 227, 240, 95 P.3d 764 (2004).

No. 36276-1-III
*Behla v. R.J. Jung, LLC*

Labeling causation as speculative plays a unique role in summary judgment jurisprudence. If one takes many statements of the law literally, a court must withdraw consideration of a tort suit from a jury and grant summary judgment or a directed verdict to the defendant, if the plaintiff bases his assertion of causation on speculation, or at least if the facts present at least two speculative causes. Under these statements of the law, identifying speculation becomes the prerogative of the judge, not the jury.

The rule, on which R.J. Jung principally relies and which we anatomize, declares: when "two or more conjectural theories" exist, "under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred." *Gardner v. Seymour,* 27 Wn.2d 802, 809 (1947). We label this rule "the stated rule." Courts often quote and apply this stated rule. *Schmidt v. Pioneer United Dairies*, 60 Wn.2d 271, 276, 373 P.2d 764 (1962); *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 379 (1999); *Schneider v. Rowell's, Inc.*, 5 Wn. App. 165, 168, 487 P.2d 253 (1971). Note that the rule precludes a jury from speculating. Under such a rule the trial court plays the function of a gatekeeper and evaluates evidence to determine if the plaintiff's proffered cause relies on speculation, and, if so, whether other possible conjectural theories exist. If the court so finds, the court must remove the suit from the consideration of the jury.

7

We criticize the stated rule. The rule only applies if at least two speculative causes subsist, suggesting that, if only one conjectural theory exists, the jury can decide causation. The rule begs the question of what action the trial court takes if the plaintiff's identified cause is speculative, but neither the defendant nor the court can conjure any other potential cause of the injuries. In this appeal, however, R.J. Jung advances other conjectural causes.

The stated rule may assume that two causes of an event are just as likely to be the true cause. We question whether causes of human events can be precisely weighed such that one possible cause is just as likely to be the cause of a plaintiff's injuries as another possible cause.

The stated rule suffers from a more fundamental flaw. The rule assigns to the trial court and eventually an appeals court the task of discerning whether a plaintiff's offered cause depends on speculation. But we question whether the trial court or an appellate court is always a better decision maker than twelve representatives of the community when surmising if an alleged cause suffers from speculation. Judges receive no special training and have no peculiar insight into cause and effect in the physical world. We specialize in wordsmithing and sophistry, not applied physics and applied psychology.

If the trial court applies the stated rule and a plaintiff survives a summary judgment or directed verdict motion, the court must have determined that the plaintiff's proffered cause does not rely on speculation. Nevertheless, even if a plaintiff defeats a summary judgment motion by presenting a factual question on causation, the defense still argues to the jury that the plaintiff bases his or her claim on speculation. Based on the stated rule, defense counsel should be precluded from telling the jury that plaintiff's claim relies on speculation if the case proceeds beyond the summary judgment stage.

Other rules of causation affirm and expand the stated rule probably even to cases when the defense does not identify other possible causes. The claimant cannot show that an accident happened in a certain way by simply showing that it might have happened in that way and without further showing that it could not reasonably have happened in any other way. *Gardner v. Seymour*, 27 Wn.2d 802, 810 (1947); *Whitehouse v. Bryant Lumber & Shingle Co.*, 50 Wn. 563, 565-56, 97 P. 751 (1908). When more than one possible cause of an injury exists, plaintiff's evidence, whether direct or circumstantial, must reasonably exclude every hypothesis other than plaintiff's offered cause. *O'Donoghue v. Riggs*, 73 Wn.2d 814, 824, 440 P.2d 823 (1968). The facts relied on to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or reasonably can be drawn from them.

9

*Schmidt v. Pioneer United Dairies*, 60 Wn.2d 271, 276, 373 P.2d 764 (1962). In the context of a summary judgment motion or a motion for directed verdict, the trial court must view conflicting evidence in the light most favorable to the nonmovant party and determine "whether the proffered result is the only reasonable conclusion." *Estate of Borden ex rel. Anderson v. State, Department of Corrections*, 122 Wn. App. 227, 240, 95 P.3d 764 (2004).

We also question these additional rules. The jury usually determines what conclusions are reasonable. The better rule would be that the reviewing court determines if plaintiff's proffered cause is a reasonable conclusion rather than the only reasonable conclusion or the most reasonable conclusion.

Speculation is a specious word. One person's proof may be another person's speculation. What constitutes speculation may enter a shadow zone where some triers of fact may determine plaintiff's tendered cause to be speculative, while other reasonable people would determine causation to be proven. Whereas, the trial court should not allow a jury to decide a personal injury claim if the jury must undoubtedly speculate as to whether any breach of duty caused the plaintiff's injuries, reasonable persons may disagree as to whether causation is speculative in discrete circumstances. Thus, when addressing purported "speculative" claims, the trial court should give the benefit of the

doubt as to causation to the plaintiff and only dismiss a claim to the extent the court can decide that all reasonable people would conclude causation to be speculative.

We now review Washington decisions, starting with decisions forwarded by R.J. Jung. Jung relies on three Washington cases to argue that the facts asserted by James Behla are insufficient to demonstrate proximate cause and overcome a summary judgment motion. *Gardner v. Seymour*, 27 Wn.2d 802, 180 P.2d 564 (1947); *Little v. Countrywood Homes*, 132 Wn. App. 777, 133 P.3d 944 (2006); *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 972 P.2d 475 (1999). All of these cases espouse the stated rule of causation.

In *Gardner v. Seymour*, Jean Gardner, a manager of a second floor store, exited the store to a hallway in the store's building to retrieve stock replacements. Six minutes after leaving the store, Gardner was found critically injured at the bottom of a freight elevator shaft. No witness observed Gardner fall into the shaft. Gardner subsequently died from his injuries. On appeal, the Washington Supreme Court reversed a jury verdict in favor of Gardner's widow, with the court holding that Gardner failed to prove, as a matter of law, that the alleged negligence of the store owner caused the death.

In *Gardner v. Seymour*, the Washington Supreme Court reasoned that at least two equally reasonable inferences explained Jean Gardner's plummet to his death. The facts

11

showed that a cord operated the freight elevator platform. If safely operated, the doors to

the elevator functioned as safeguards and latched at each floor unless the platform rested

at that specific floor. These safeguards, however, could be overcome if another worker

wanted to avoid a walk to a higher or lower floor where the freight elevator rested. In

that situation, the worker could pry the elevator doors open at the lower floor and

manipulate the cord to bring the platform to the desired floor. The maneuvering could

result in one later seeking to use the elevator to mistakenly walk into the shaft with no

platform and fall to his or her death. The state high court deduced that either Jean

Gardner opened the doors to summon the platform from another floor and in doing so

caused his own death, or his death resulted from another worker leaving the shaft doors

open with no platform present. Under the first scenario, Gardner was responsible for his

death. Under the second hypothesis, the building owner was liable for the death. No

evidence showed one cause more likely than the other.

The *Gardner* court distinguished between conjecture and reasonable inference

based on circumstantial evidence. The court wrote:

> no legitimate inference can be drawn that an accident happened in a
> certain way by simply showing that it might have happened in that way, and
> without further showing that it could not reasonably have happened in any
> other way.

*Gardner v. Seymour*, 27 Wn.2d at 810 (quoting *Whitehouse v. Bryant Lumber & Shingle Co.*, 50 Wash. 563, 565-66, 97 P. 751 (1908)). This passage suggests, contrary to the general rule, that the plaintiff must not only establish that his or her identified cause is more likely the true source of injury, but the plaintiff must also rule out all possible, but reasonable, causes. This burden may often be impossible to fulfill.

In *Little v. Countrywood Homes*, 132 Wn. App. 777 (2006), Jared Little's brother and coworker found Little, a gutter installer, lying on the ground next to a home being built. A ladder laid on the ground next to Little. Little was disoriented from injuries he sustained moments before. Little did not know how he fell and presented no testimony that he even climbed the ladder. No witness saw Little climb the ladder or fall.

Jared Little sued the general contractor, Countrywood Homes, alleging that Countrywood's negligence caused his injuries. Little claimed that Countrywood failed to require ladders to be secured per regulations or failed to provide stable ground on which to set the ladder. The trial court dismissed Little's suit on summary judgment, and this court affirmed. This court explained that one could speculate that the ladder was not properly secured or that the ground beneath it was unstable, but Little presented no evidence that one of these conditions more probably than not caused his injuries.

13

In *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372 (1999), Kim Marshall was injured on a treadmill at Bally's Pacwest. In her complaint, Marshall alleged she was exercising on the treadmill when it stopped abruptly in the middle of her program. Marshall reprogrammed the treadmill and pushed the "start" button. According to Marshall, the treadmill restarted at 6.2 miles per hour rather than its usual 2.5 miles per hour. Marshall alleged that, because of the sudden and unexpected start, she was violently thrown from the treadmill, causing severe injuries when her head struck a plexiglass wall behind the machine. Nevertheless, during her deposition, Marshall testified that (1) she did not recall how abruptly the treadmill reached full speed, (2) she did not recall being "thrown" from the treadmill, and (3) she did not recall hitting the glass behind the wall. Rather, Marshall last remembered, before her fall, resetting the machine after it stopped. The trial court summarily dismissed Marshall's suit for lack of evidence establishing cause in fact.

On appeal, in *Marshall v. Bally's Pacwest*, Kim Marshall conceded that she did not recall the specifics of how fast the machine restarted. The Court of Appeals affirmed the summary judgment dismissal. Without any memory of the accident, Marshall offered only a theory as to how she sustained her injuries. Marshall provided no evidence that

14

she was thrown from the machine, what caused her to be thrown from the machine, or how she was injured.

We compare R.J. Jung's three favorite cases with other Washington decisions. In *Conrad ex rel. Conrad v. Alderwood Manor*, 119 Wn. App. 275, 78 P.3d 177 (2003), family members of Enid Conrad, age 91, sued her nursing care facility as a result of a broken femur. Because of an earlier debilitating stroke, Conrad could not explain how she broke her femur. The family claimed moving of Conrad by facility staff caused the bone break. In response, the care facility postulated numerous potential causes, including her osteoporosis and Conrad's husband moving her. The care facility then relied on the stated rule that, if more than one event could have caused the injury and each event is as plausible as the other events, the jury must impermissibly rely on speculation such that the defendant is entitled to a directed verdict. This court affirmed a verdict in favor of the Conrad family on appeal because the family presented believable evidence to refute each of the care facility's proffered causes. The husband agreed that he had recently wheeled Conrad in her wheelchair, but he averred he did nothing to cause the broken femur. An orthopedist testified that osteoporosis did not cause the break.

In *Esparza v. Skyreach Equipment, Inc.*, 103 Wn. App. 916, 15 P.3d 188 (2000), Matt Esparza suffered severe injuries when he stood on a manlift and the manlift tipped.

Esparza argued that the malfunctioning of circuit cards caused the tipping and that, had

Skyreach Equipment, the company that rented the lift to his employer, timely and

reasonably inspected the mechanism, the company could have prevented the malfunction.

Skyreach Equipment claimed the existence of other possible causes. This court affirmed

a verdict in favor of Esparza. This court reviewed expert testimony and concluded that a

rational juror "could have" concluded that the failure to inspect was the "likely" cause of

the tipping. 103 Wn. App. at 928.

We observe that the court, in *Esparza v. Skyreach Equipment, Inc.*, employed the

phrase "could have" and the word "likely" in the same sentence. The terms diverge since

"could have" means possibly and "likely" means "probably." Nevertheless, we extract

from the sentence the notion that, assuming there is more than one possible cause of

plaintiff's injury, the jury should determine what cause probably caused the injury and

whether other causes are speculative. If the court concludes that plaintiff's proffered

cause "could have" been the likely cause, the court should allow the jury to decide the

likely cause.

Some rules of causation benefit James Behla. Precise knowledge of how an

accident occurred is not required to prove cause in fact. *Mehlert v. Baseball of Seattle,

Inc.*, 1 Wn. App.2d 115, 118, 404 P.3d 97 (2017); *Klossner v. San Juan County*, 21 Wn.

App. 689, 692, 586 P.2d 899 (1978).  The plaintiff need not establish causation by direct

and positive evidence.  *Attwood v. Albertson's Food Centers, Inc.*, 92 Wn. App. 326, 331,

966 P.2d 351 (1998).  The claimant can establish causation by inferences arising from

circumstantial evidence.  *Klossner v. San Juan County*, 21 Wn. App. at 692; *Raybell v.*

*State*, 6 Wn. App. 795, 801, 496 P.2d 559 (1972).  He or she need only show by a chain

of circumstances from which the ultimate fact required is reasonably and naturally

inferable.  *Conrad ex rel. Conrad v. Alderwood Manor*, 119 Wn. App. 275, 281 (2003).

Plaintiff need not negative every possible cause.  *Frescoln v. Puget Sound Traction, Light*

*& Power Co.*, 90 Wash. 59, 65, 155 P. 395 (1916).

R.J. Jung argues that James Behla relies only on speculation because he lacks any

direct knowledge that he tripped on the cable.  According to R.J Jung, Behla surmises the

cable caused his injury only because of his observations when he regained consciousness.

According to R.J. Jung, Behla's failure to recall how he fell requires a ruling of

insufficient evidence of cause in fact since no one saw him stumble on the black cable.

R.J. Jung then advances other possible causes of Behla's tumble.  Behla could just as

likely have tripped on his own two feet, slipped on ice, stumbled on a natural object such

as a rock or a stick, or tumbled on the lip of the concrete slab.  According to R.J. Jung, the

stated rule requires summary judgment in its favor because the other possible causes are as likely to be the true cause as is the coiled cable.

James Behla emphasizes many facts in his effort to defeat summary judgment. First, Behla had navigated the terrain around the shed for more than a decade without falling. Second, he regularly traversed the terrain at night without earlier falls. Third, the cord had only recently been extended to the recreational vehicle. Fourth, only an inch of snow rested on the ground. Fifth, the parking lot contained no large rocks on which to stumble. Sixth, he saw no stick or other object that could have caused his stumble. Seventh, the positioning of his body partially on the slab and partially off the slab renders tripping over the slab unlikely. Eighth, Behla saw the cable in the location where he fell. Ninth, he was in good health.

We reject application of *Gardner v. Seymour*'s stated rule under the circumstances of James Behla's fall. We instead rely on at least two other rules of causation. First, if the plaintiff can rationally rule out other potential causes, the jury should decide if plaintiff's proffered cause constitutes the true cause of harm or rests in speculation. Second, if the plaintiff can show that his offered cause could have caused his injury, the jury should decide whether the plaintiff's proffered cause is based on speculation or if defendant's list of possible causes relies on speculation.

When taking the facts in the light most favorable to James Behla, we conclude that a jury should decide causation. A reasonable juror could conclude that the black cable more likely than not caused the fall. Behla presents evidence discounting the snowfall as a cause because of its small depth and because no ice formed. Because of the gravel lot, Behla's footing would be firm. Behla was in good health and physique. No evidence suggests that Behla was clumsy and tripped over his own feet. Behla discounts the possibility that a stone or stick or even some other foreign object caused his fall because he looked and no such object was present. Behla presents evidence dismissing the lip of the shed slab as the cause because of the location of his body on the lip of the concrete slab. After reducing the likelihood of other causes being the true cause, Behla provides testimony that he saw the cable in a coiled position that could have caused someone to trip. He came to his conclusion, at the scene of his tumble, of the cord causing his fall rather than later deducing the cable as a cause in order to sue for his injuries.

Unlike in *Gardner v. Seymour*, James Behla survived the accident. Unlike in *Marshall v. Bally's Pacwest* and *Little v. Countrywood Homes*, the injured party, when gaining awareness, immediately scanned the environment to determine the cause of his fall. In *Marshall v. Pacwest*, plaintiff did not know at what speed the machine started.

We know, assuming James Behla to be believed, that a cord lay in the pathway where he walked.

We note that a person who trips often does not notice what caused the fall or else the person could have prevented the fall. The result proposed by R.J. Jung might preclude an injured party, who suffers temporary amnesia from the fall, from always recovering, when no witness saw the fall, despite the physical conditions discovered by the party immediately on regaining consciousness. The responsible party would avoid liability when its negligence caused severe enough injuries for the claimant to suffer amnesia.

R.J. Jung also relies on some foreign decisions. We discuss two foreign decisions, but then juxtapose each decision with another decision inside its respective state to illustrate how each case revolves around its unique facts.

In *Majetich v. P.T. Ferro Construction Co.*, 389 Ill.App.3d 220, 906 N.E.2d 713 (2009), one of R.J. Jung's cases, a son filed suit against the owner of a strip mall and a construction company for the death of his mother. The construction company was repaving the mall's parking lot. The mother fell near a step caused by the paving project. The trial court dismissed the case on summary judgment since the son could not show whether any action by the defendants caused the death. The appellate court affirmed.

The court reasoned that the mother could have fallen for any one of countless reasons that people fall. The court also mentioned that the elderly mother already suffered from serious medical conditions.

The Illinois Court of Appeals, in *Majetich v. P.T. Ferro Construction Co.*, distinguished the case before it from *Wright v. Stech*, 7 Ill.App.3d 1068, 288 N.E.2d 648 (1972), in which the deceased's survivor sought to recover damages caused by the alleged negligence of the owner of a building in which the decedent worked. The appeals court reversed a directed verdict in favor of the owner. Dessie Wright worked as a domestic in the employ of Christine White, who resided on the third floor of an apartment building. Wright accessed White's apartment by a stairway, which extended from the front door of the building to the front door of the apartment. Garbage and debris covered the steps in the dimly lit stairway. An electric light fixture could have provided illumination, but the fixture lacked a bulb. One day as Wright left White's apartment and descended the stairway, White heard a loud thump. White rushed from her apartment and found Wright sprawled on a stairway landing. Wright died from the injuries. No one could testify to the cause of Wright's fall, but her survivor claimed the debris and poor lighting resulted in Wright's demise. The court of appeals held that a jury could rely on Christine White's testimony that, after seeing Wright sprawled in the stairway, White saw debris in the

21

stairwell. The court noted that, even if other causes could have reasonably led to

Wright's fall, the question of causation remained one for the jury. The court observed

that Christine White, like James Behla, was otherwise in good health.

Jennifer Jung also relies on *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 589

S.E.2d 259 (2003). In *Pennington*, the appeals court affirmed summary judgment in favor

of the owner of a building because the plaintiff relied only on speculation to establish

proximate cause. Thomas Pennington entered a dimly lit warehouse through a door. He

then went to open a second door from the inside. On doing so, he felt a "loss of balance"

and tried to catch himself. Pennington felt his shoulder being pulled and then saw that his

fingers were severed. A coworker arrived to assist him and saw hoses in a pile just inside

the door where she found Pennington's fingers. Pennington had no memory of his feet

touching the hoses or of seeing them, but he alleged that he must have tripped over them.

The court reasoned that Pennington presented no evidence that he actually tripped, only

that hoses were present at the scene. Therefore, Pennington's argument was solely based

on speculation.

We compare and contrast *Pennington v. WJL, Inc.* with another Georgia decision,

*Williams v. EMRO Marketing Co.*, 229 Ga. App. 468, 494 S.E.2d 218 (1997). Nathaniel

Williams drove his car to work, when he stopped for gasoline at a store operated by

EMRO. He first paid inside the store and then returned to his car along the same route to pump gas. On his return, he slipped and fell, injuring his knee and other parts of his body. He never saw on what he slipped, and he never saw any ice. His clothes were not wet from ice or water. Another customer, Gregory Perkins, averred that he retrieved a large piece of ice near where Williams slipped. The court of appeals reversed a summary judgment dismissal of Williams' suit. According to the court, a jury could reason from Perkins' testimony that dangerous ice, for which the gas station was responsible, caused Williams' fall.

We have reserved for the end the obligatory summary judgment principles. Summary judgment is proper if the records on file with the trial court show no genuine issue as to any material fact. CR 56(c). The appeals court, like the trial court, construes all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Barber* v. *Bankers Life & Casualty Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972). If any genuine issue of material fact exists, the court must order a trial. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

Cause in fact usually presents a question for the trier of fact and is generally not susceptible to summary judgment. *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013). In most instances, the question of cause in fact is for the jury. *Daugert v.*

*Pappas*, 104 Wn.2d 254, 257, 704 P.2d 600 (1985). The plaintiff can survive a motion to dismiss if he presents "some competent evidence of factual causation" that precludes jury speculation. *Estate of Borden ex rel. Anderson v. State, Department of Corrections*, 122 Wn. App. 227, 242, 95 P.3d 764 (2004). The court may decide cause in fact as a matter of law, however, if the facts and inferences from them are plain and not subject to reasonable doubt or difference of opinion. *Daugert v. Pappas*, 104 Wn.2d 254, 257 (1985). Stated another way, causation becomes a question of law for the court only when the causal connection is "so speculative and indirect" that reasonable minds could not differ. *Mehlert v. Baseball of Seattle, Inc.*, 1 Wn. App.2d 115, 119 (2017); *Doherty v. Municipality of Metropolitan Seattle*, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996). Use of the phrase "so speculative" suggests degrees of speculation such that the jury should often be the decider of speculation.

Summary judgment procedure aims to avoid a useless trial. *Preston v. Duncan*, 55 Wn.2d 678, 681, 349 P.2d 605 (1960). Trial is not useless but absolutely necessary when issues of fact could lead to liability against the defense. *Preston v. Duncan*, 55 Wn.2d at 681.

We must assume, for purposes of summary judgment, that James Behla's claim of seeing a black cable in the proximity of his fall is as believable as Gregory Perkins'

24

testimony that he saw a piece of ice near where Nathaniel Williams fell and Christine White's testimony that she saw debris in the stairwell where Dessie Wright tumbled. Based on Behla's testimony, he presented an issue of fact as to the causation of his injuries.

## CONCLUSION

We reverse the summary judgment dismissal of James Behla's personal injury suit. We remand for further proceedings.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, A.C.J.

25