IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KIMBERLY ANNE BARTLETT, | ) | No. 38035-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DOUGLAS ALAN BARTLETT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Douglas Bartlett appeals a domestic violence protection order (DVPO), restraining him from contacting his former wife, Kimberly Bartlett. Mr. Bartlett argues the order lacked a factual basis because it was not predicated on proof of physical harm or the threat of physical harm. We agree. While the record is clear that Mr. Bartlett subjected Ms. Bartlett to emotional abuse, there is no evidence in the record of physical harm or abuse, as required by the DVPO statute. We therefore reverse.

FACTS

The Bartletts divorced in March 2019. Within weeks of entry of the final dissolution decree, Mr. Bartlett was charged with misdemeanor assault and malicious mischief, stemming from an altercation with Ms. Bartlett. A jury acquitted Mr. Bartlett of assault and he pleaded guilty to the malicious mischief charge. A no-contact order was issued as a result of the conviction. The order limited contact between the Bartletts to written communications concerning their minor children (a son and a daughter) and prohibited Mr. Bartlett from going within 1,000 feet of Ms. Bartlett's home. The no-contact order was set to expire in April 2021.

Over the course of 2020, the Bartletts exchanged e-mails and text messages. After Mr. Bartlett dropped off their son at Ms. Bartlett's home in April 2020, he took a phone call while parked in his car outside the home. Ms. Bartlett sent Mr. Bartlett a text message, asking him to leave. Mr. Bartlett responded, "I can sit here as long as I want[.] I'm on my phone[.] Goofball[.] You might want to get your mental capacity checked." Clerk's Papers (CP) at 15. When Ms. Bartlett insisted that Mr. Bartlett leave, he replied "I'm on the phone and I can sit here as long as I want. . . . Go rest your face[.]" *Id*. at 17. He also sent Ms. Bartlett a photo of a poop emoji in a cereal bowl.

In September, the two had an argumentative e-mail exchange concerning their children's residential time. Mr. Bartlett sent the following e-mail:

> [Our son] has a game tomorrow night or we are going to the track to shake his car down. I cannot physically be in two places at once. Are you that stupid to not understand this simple paradigm? I cannot drive all over Washington at this time because of you. Now, leave me the fuck alone about it and get it figured out.

*Id*. at 13. After Ms. Bartlett insisted Mr. Bartlett miss their son's football game to take their daughter to a dance class, Mr. Bartlett replied "Eat me." *Id*.

> The issue of residential time resulted in another e-mail argument in October:
>
> [Ms. Bartlett:] [Our son] is doing homework. It is my time with him now through this Friday at 6 pm until Sunday at 6 pm. He and I will make the decision through the week what is best for him and where he stays.
>
> My time...my rules.
>
> [Mr. Bartlett:] Kim. I don't want him driving in morning traffic and he has to be up early.
> . . . .
> [Mr. Bartlett]: Just think….someday you won't be able to suck my tit anymore and you'll never have a reason to get a hold of me. That'll be a wonderful day.
> . . . .
> [Mr. Bartlett:] Its sad that its gotten to this point, isn't it? My hatred for you is immense. I wouldn't piss on you if you were on fire.

*Id*. at 10-11. Earlier on that same day, Mr. Bartlett also sent Ms. Bartlett the following e-mail:

3

> Sometimes we do things in the now not realizing how it'll affect the future. I'm not only battling you but a corrupt judge and your corrupt ex attorney. You have no idea whats [sic] going on. With your help I could bury Stenzel. You have the proof. With your help we could end all this. This is the last time I'll ask you to grow some common sense. If you can't read between the lines then you're dumber than I thought. [Our son] is doing great in school. He seems happy here. We brought him back to play football since his car blew up. He had a decent game. If you wanna [sic] sit down and put an end to this then sooner than later is the way to go. If not you can keep going down the road we are going down to be left with a wrecked car.

*Id*. at 20.

In November, Mr. Bartlett picked up their son from Ms. Bartlett's home. Ms. Bartlett believed Mr. Bartlett was too close to her home and called the police. The police did not make an arrest.

On January 8, 2021, Ms. Bartlett filed a petition for a DVPO. She asked the court to restrain Mr. Bartlett from having contact with her, or coming within 1,000 feet of her home. She requested the restraining order last longer than a year, as she felt Mr. Bartlett would continue to harass her as he had throughout the original no-contact order entered in 2019.

In support of the petition, Ms. Bartlett provided information about the November 2020 incident where Mr. Bartlett came to her home to pick up their son. She also shared the contents of Mr. Bartlett's e-mails. With respect to the April 2019 incident, Ms. Bartlett stated that on April 14 Mr. Bartlett "was going through my cupboards and when I asked

him to stop he got very angry, broke a water filter and an altercation took place. I sustained injuries to my back and a strained neck." *Id*. at 5. Ms. Bartlett stated she was "fearful" of Mr. Bartlett "based on his statements of 'hatred' towards me and his erratic behavior, comments in emails and texts." *Id*. at 7.

A court commissioner granted a temporary protection order and scheduled a hearing on the merits.

At the full hearing, Ms. Bartlett testified about the text messages and e-mails she had received from Mr. Bartlett, calling them "intimidating." Report of Proceedings (RP) (Jan. 21, 2021) at 7. She also described Mr. Bartlett's overstays in her home's driveway. Ms. Bartlett argued that domestic violence "is not just physical abuse. It is emotional, financial, and psychological abuse." *Id*. She concluded by stating:

> All I'm asking for Your Honor is for an extension of this order that expires in April. I am fearful of him. I cannot continue with this emotional abuse. I don't understand why he cannot just communicate with me with the children. I'm afraid to open any emails.

*Id*. at 13.

The court commissioner found Mr. Bartlett had violated the existing no-contact order from Mr. Bartlett's criminal case, but noted that she could not extend that no-contact order any further. However, she granted Ms. Bartlett's petition for a DVPO.

5

Mr. Bartlett subsequently moved to revise the commissioner's ruling. The motion was never heard as it was dismissed based on failure to comply with local rules. Mr. Bartlett has filed a timely appeal.

ANALYSIS

To commence a DVPO action, a person must file a petition alleging the existence of "domestic violence," along with an affidavit reciting specific facts and circumstances from which relief is sought. RCW 26.50.030(1). As relevant here, "domestic violence" is defined as

> [p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault or stalking as defined in RCW 9A.46.110[1] of one family or household member by another family

---

[1] Under RCW 9A.46.110(1), a person is guilty of the crime of stalking if:

> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
> (b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
> (c) The stalker either:
> (i) Intends to frighten, intimidate, or harass the person; or
> (ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

It does not appear Ms. Bartlett has ever made a claim of stalking. In any event, stalking requires proof of fear of physical injury to persons or property.

6

or household member

RCW 26.50.010(3)(b).

This definition makes clear that domestic violence must involve some sort of physical violence or threatened infliction of physical violence. The Supreme Court's decision in *Rodriguez v. Zavala*, 188 Wn.2d 586, 398 P.3d 1071 (2017), underscores this point. The *Zavala* court took an expansive view of who might be victimized by domestic violence, recognizing that domestic violence harms all individuals living in a violent household, not just the direct recipients of abuse. *Id*. at 596-97. But the Supreme Court did not take an expansive approach to the concept of domestic violence itself. The court recognized that, under the terms of the DVPO statute, domestic violence is defined to require "*physical* harm." *Id*. at 592 (emphasis added).[2]

Ms. Bartlett has not alleged facts sufficient to show physical harm as required by the DVPO statute. Most of the evidence submitted by Ms. Bartlett consisted of disparaging e-mails and name calling, none of which included threats of physical harm. When describing the April 14, 2019, incident, Ms. Bartlett stated there was an altercation, but she did not specify whether the altercation was physical in nature. We could speculate

---

[2] We note that in the criminal context, the definition of domestic violence is much broader. RCW 10.99.020(4).

that Ms. Bartlett's reference to sustaining injuries means they were the product of a physical attack by Mr. Bartlett. But speculation is not sufficient to justify a finding of wrongdoing. *See Behla v. R.J. Jung, LLC*, 11 Wn. App. 2d 329, 335-42, 453 P.3d 729 (2019). On the information provided, the evidence is insufficient to conclude Mr. Bartlett has engaged in acts of domestic violence.

We note that a DVPO is a significant court order. The order itself restricts the subject's freedom of movement and typically deprives the subject of the right to possess firearms. 18 U.S.C. § 922(g)(8); RCW 9.41.040(2)(a)(iii). Violation of the order exposes the subject to criminal penalties, even if the violation was at the invitation of the protected party. RCW 26.50.035(1)(c). We cannot and will not lightly uphold a DVPO based on insufficient proof.

Although we do not rule in Ms. Bartlett's favor, we are not unsympathetic to her circumstances. Ms. Bartlett should not be forced to live in fear of constant verbal abuse. It could be that other legal avenues are available.[3] However, the criteria for a DVPO has not been met. The order is therefore reversed.

---

[3] A DVPO is not the only form of restraining order. For example, Washington law allows for anti-harassment restraining orders. RCW 10.14.040. We express no opinion about whether or not Ms. Bartlett might qualify for an anti-harassment restraining order or some other form of relief.

CONCLUSION

The order granting Ms. Bartlett's petition for a domestic violence protection order is reversed. The parties' requests for attorney fees on appeal are denied as neither side has cited an applicable legal basis for an award of fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.